## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.:

PANORAMA CONSULTING SOLUTIONS, LLC, and
KHG HOLDINGS, LLC,

      Plaintiffs,

v.

ERIC KIMBERLING, and
THIRD STAGE CONSULTING GROUP LLC,

      Defendants.

---

## COMPLAINT

---

Plaintiffs Panorama Consulting Solutions, LLC and KHG Holdings, LLC (collectively "Plaintiffs") for their Complaint against Eric Kimberling and Third Stage Consulting Group LLC state and allege as follows:

## <u>INTRODUCTION</u>

1.     Panorama Consulting Solutions, LLC is an independent Enterprise Resource Planning ("ERP") consultant and digital transformation expert.  Panorama specializes in enterprise consulting, infrastructure consulting and digital transformation for mid- to large-sized, private and public sector organizations across the globe.

2.     Until his recent resignation from Panorama, Defendant Eric Kimberling was a manager of the company and one of its officers.  In breach of his fiduciary duties, Kimberling intentionally sought to divert customers away from Panorama for his own benefit, solicited Panorama employees to join a new business he was forming, and stole company property.  Since

leaving Panorama, Kimberling has failed to return company property, including laptop computers containing Panorama's highly sensitive trade secrets, and Kimberling and his new company, Third Stage Consulting LLC, are using Panorama's trade secrets without authorization to compete with Panorama.  Panorama brings this lawsuit to recover damages caused by Kimberling's and Third Stage's intentional misconduct and to prevent them from causing any further harm to Panorama.

<u>**PARTIES**</u>

3.     Plaintiff KHG Holdings, LLC ("KHG") is a Colorado limited liability company with its principal place of business located at 5975 South Quebec Street, Suite 207, Greenwood Village, Colorado 80111.

4.     Plaintiff Panorama Consulting Solutions, LLC ("Panorama") is a Colorado limited liability company with its principal place of business located at 5975 South Quebec Street, Suite 207, Greenwood Village, Colorado 80111.

5.     Defendant Eric Kimberling ("Kimberling") is an individual who, on information and belief, resides at 9382 East Hidden Hill Court, Lone Tree, Colorado 80124.

6.     Defendant Third Stage Consulting Group LLC ("Third Stage") is a Colorado limited liability company with its principal place of business located at 9382 East Hidden Hill Court, Lone Tree, Colorado 80124.

<u>**JURISDICTION AND VENUE**</u>

7.     This Court has subject matter jurisdiction over this case because Plaintiffs allege claims under the Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. § 1836(c), and the Lanham Act, 15 U.S.C. § 1125(a), which arise under the laws of the United States.  28 U.S.C.

§ 1331.  This Court has supplemental jurisdiction over Plaintiffs' state-law claims under 28 U.S.C. § 1367(a).

8.      This Court has personal jurisdiction over Kimberling because he is a resident of Colorado, he has frequent, continuous, and systemic contacts with Colorado, and his actions giving rise to Plaintiffs' claims occurred in Colorado.

9.      This Court has personal jurisdiction over Third Stage because it is a Colorado entity and has its principal place of business in Colorado, and because its actions giving rise to Plaintiffs' claims occurred in Colorado.

10.     Venue is proper in this Court because Kimberling and Third Stage are residents of Colorado and because a substantial part of the events or omissions giving rise to the claims occurred in Colorado.

## GENERAL ALLEGATIONS

### *Kimberling, Hamler, and Davison Form Panorama*

11.     Kimberling formed Panorama Consulting Group LLC in or about 2005.

12.     In early 2011, Kimberling, Calvin Hamler ("Hamler"), and Zajra Vanessa Davison (f/k/a Zajra Vanessa Giacoman) ("Davison") agreed to form a new business, Panorama Consulting Solutions, which would operate as a d/b/a of The Prescott Group, LLC ("Prescott").

13.     As part of the wind down of Panorama Consulting Group LLC, Kimberling transferred all intellectual property concerning the Panorama Consulting brand to Prescott.

14.     Prescott registered "Panorama Consulting Solutions" as a trade name on May 2, 2011.

15.     In September 2011, Kimberling, as President and Chairman of Panorama Consulting Solutions, directed the company's Senior Marketing Manager to transfer registration of the www.panorama-consulting.com domain name from Panorama Consulting Group to Panorama Consulting Solutions.

16.     In October 2011, Kimberling executed an Employment Agreement with Prescott agreeing, among other things, that Prescott would retain all rights in the Panorama Consulting brand in the event that Kimberling might seek to leave Prescott unilaterally.

17.     In or about September 2012, the parties agreed to separate the Panorama Consulting Solutions business from Prescott.

18.     As part of that process, Kimberling, Hamler, and Davison agreed to form a new entity, Panorama Consulting Solutions, LLC ("Panorama").

19.     On September 30, 2012, Kimberling, along with Hamler, Davison, and Prescott, executed an Asset Purchase Agreement under which Prescott transferred all rights to the Panorama Consulting brand, including all related domain names, to the newly formed Panorama.

20.     Kimberling filed a Chapter 7 Voluntary Petition for bankruptcy protection on or about November 11, 2011.  Kimberling did not list the www.panorama-consulting.com domain name, or any other Panorama Intellectual property, on his Chapter 7 bankruptcy disclosures, which he signed under penalty of perjury.

21.     Since approximately September 2011, the domain name registrant for the www.panorama-consulting.com domain name has been Panorama Consulting Solutions or Panorama, the domain name has been managed by Panorama Consulting Solutions' or

Panorama's marketing and IT teams, and Prescott and Panorama have paid all registration costs associated with this and other Panorama domain names.

22.     Panorama Consulting Solutions, and then Panorama, have operated the consulting business through the www.panorama-consulting.com website from approximately September 2011 through the present time.

23.     Kimberling, Hamler, and Davison also formed KHG as the parent company of Panorama.  KHG is the sole member and manager of Panorama.

24.     KHG is a manager-managed LLC.  Hamler and Davison are each managers of KHG.  Hamler and Davison are also officers of Panorama, each serving as a Managing Partner of Panorama.

25.     Kimberling was a manager of KHG from KHG's inception through April 13, 2018, the effective date of his resignation.

26.     Kimberling was also an officer of Panorama, serving as one of Panorama's Managing Partners from at least as early as January 2013 through April 13, 2018, the effective date of his resignation.

### *Kimberling Introduces Envision as a Potential Business Partner of Panorama, Begins Pushing Work to Envision, and Continues to do so after Envision Terminates the Discussions*

27.     In or about December 2017, Kimberling engaged in discussions with one of his former bosses, Robert Novick ("Novick"), the managing partner at Envision Business Consulting, LLC ("Envision"), concerning a possible business arrangement.

28.     Envision provides consulting services some of which are similar to the services offered by Panorama.  Kimberling strongly advocated for Panorama to work with Envision.

29.     Panorama and Envision entered into a Mutual Non-Disclosure Agreement (the "Non-Disclosure Agreement") dated January 31, 2018.

30.     After the parties entered into the Non-Disclosure Agreement, Kimberling secretly began to advocate using Envision to work on existing Panorama projects and to divert business leads to Envision for potential new work that Panorama was ready, willing, and able to provide.

31.     In early 2018, for example, Panorama received a referral to do consulting work on Organizational Change Management ("OCM") for a large pool supplies and services company. Instead of relying on available Panorama resources to follow up on this lead, Kimberling retained Envision as a subcontractor to provide a paid sales engagement and pushed this work to Envision.

32.     Around the same time, Panorama had also contracted with a long-term client, a large steel producer, to do OCM consulting work.  Kimberling again aggressively advocated using an Envision subcontracted resource as a key resource for the project.  When Panorama's consulting delivery team disagreed and determined that another resource was more qualified to perform the work, the matter was escalated to Panorama's Managing Partners, including Hamler and Davison, who supported Panorama's consulting delivery team.

33.     When Davison telephoned Novick to inform him that the Envision subcontractor had not been selected for the steel producer project, Novick became enraged and hung up on Davison.  The next day, on March 15, 2018, Novick sent an email to the Envision Leadership Team and notified them that Envision was terminating business discussions with Panorama. Novick blind copied Kimberling on his email to the Envision Leadership Team.  Kimberling replied to Novick, "Great email.  I forwarded to C&V as well."

34.     After Envision stated that it was terminating discussions concerning a potential business arrangement with Panorama, Kimberling continued to advocate using Envision to work on Panorama projects and to divert leads to Envision for work that Panorama was ready, willing, and able to provide.  On information and belief, Kimberling intended to join or otherwise partner to do business with Envision after his resignation from Panorama.

35.     On or about March 16, 2018, for example, Panorama received a request for proposal from a large water utility company.  Kimberling immediately forwarded the opportunity to Envision, stating, inaccurately and without consulting with Hamler or Davison, that Panorama was passing on the opportunity because it "doesn't fit our sweet spot."

36.     On March 19, 2018, Kimberling responded to an email inquiry from an electric utility company, another long-term Panorama client, and suggested that the company consider working with Envision.

37.     On March 20, 2018, Kimberling introduced Envision to an IT service provider that Panorama had been working on joint opportunities with since 2016, to facilitate a potential business relationship between the IT service provider and Envision.

38.     On March 27, 2018, Kimberling reached out to a potential Panorama client to review a proposal for services.  Kimberling copied Envision on his email to the potential client even though Envision had nothing to do with the potential client or the potential client's request, which concerned services that Panorama was ready, willing, and able to provide.

39.     And on March 29, 2018, without consulting with either Hamler or Davison, Kimberling sent an email to Envision declaring, "Envision is free to pursue" work with the pool

supplies and services company, and proposing that Kimberling himself stay on as a subcontractor on the project for Envision.

### *After Hamler Exposes Kimberling's Scheme,*
### *Kimberling Resigns and Attempts to Cover His Tracks*

40.     On April 3, 2018, Hamler confronted Kimberling about Envision's involvement with the pool supplies and services company and reminded Kimberling that Envision should not be involved at all because it had decided to terminate business discussions with Panorama.

41.     Two days later, on April 5, 2018, Kimberling provided his notice of resignation as a manager of KHG and officer of Panorama, effective April 13, 2018.

42.     Two days after providing his notice of resignation, on April 7, 2018, Kimberling sent an email to the electric utility company telling them that "this is something Panorama can absolutely handle."  Kimberling then attempted to purge this email from Panorama's system.

43.     On April 8, 2018, Kimberling sent another "cover-up" email, this one to Envision, advising Envision that Panorama would pursue business with the pool supplies and services company without involvement from Envision.  Kimberling then attempted to purge this email from Panorama's system, too.

44.     In all, Kimberling attempted, unsuccessfully, to purge at least eight incriminating emails he had sent, including the following:

- Kimberling's March 15, 2018 email to Novick, congratulating Novick for Novick's email to the Envision Leadership Team regarding Envision's decision to terminate business discussions with Panorama ("Great email.  I forwarded to C&V as well.");

- Kimberling's March 30, 2018 email to Envision providing comprehensive notes of Kimberling's calls with the electric utility company, a Panorama client; and

- Kimberling's April 2, 2018 email to Envision, forwarding his previous email with comprehensive notes from Kimberling's calls with the electric utility company.

***Kimberling Steals Company Property and Attempts to Poach Employees
To Try To Leverage His Exit***

45.     At some point in early April 2018, Kimberling accessed the Panorama domain name account on GoDaddy and changed the password information for the account and for all of Panorama's domain names, including the www.panorama-consulting.com domain name that Panorama uses to operate its business (the "Panorama Domain Names"), to prevent access by Panorama employees.

46.     On April 11, 2018, Kimberling caused his legal counsel to send a letter to Panorama threatening to shut down the www.panorama-consulting.com website, claiming that neither Panorama nor anyone associated with or acting on behalf of Panorama had permission to use the domain name and demanding that Panorama "stop all such use by close of business on April 13, 2018."

47.     On or about April 12, 2018, the day before the effective date of his resignation, Kimberling changed the GoDaddy account information to list himself as the owner and registrant of the Panorama Domain Names.

48.     On April 13, 2018, the effective date of Kimberling's resignation, instead of returning Panorama's property, Kimberling continued to exercise control over the Panorama Domain Names and refused to return them to Panorama's control.  Kimberling ultimately returned the Panorama Domain Names to Panorama's control on May 21, 2018, but not before substantially interfering with Panorama's business and causing Panorama to suffer substantial expense.

49.     Despite several demands, Kimberling has also failed to return other company property.  Panorama, for example, provided Kimberling with two company laptop computers and a company iPad.  Panorama has demanded that Kimberling return these items to Panorama, but Kimberling has failed to do so.

50.     Prior to April 8, 2018, the date Kimberling gave notice of his resignation, Panorama paid Kimberling in full for work to be performed in the month of April 2018.  Because Kimberling resigned effective April 13, 2018, he owes Panorama for the time during April 2018 for which he was paid but performed no work.  Panorama has demanded that Kimberling return this amount to Panorama, but Kimberling has failed to do so.

51.     Prior to April 13, 2018, the effective date of his resignation, Kimberling contacted a Panorama Senior Account Executive on several occasions and tried to convince her to leave Panorama and join a new company Kimberling was forming.  Kimberling asked the Executive if she would be comfortable with "poaching" Panorama clients after she left.

52.     Kimberling made this statement during the same time that he was secretly referring leads and pushing potential work to Envision without input from Panorama's other Managing Partners, including without limitation work for the pool supplies and services company, the water utility company, and the electric utility company.

53.     On information and belief, Kimberling contacted other Panorama employees before leaving the company and tried to convince them to leave Panorama and join his new company, which would compete with Panorama.

***Kimberling and Third Stage Use Panorama's Trade Secrets to Compete with Panorama***

54.     As a Managing Partner of Panorama, Kimberling had access to Panorama's confidential trade secret information, including customer lists, customer contact information, information about customer needs and preferences, contractor lists, information about contractor contacts and abilities, Panorama's marketing strategies, and Panorama's business leads, business opportunities, pricing, and specific proposals to customers and potential customers, all of which Panorama developed over years of effort and substantial expense.  This information is confidential and highly valuable because it allows Panorama to anticipate and meet customer needs, tailor proposals to address specific customer preferences, and maintain long term customer relationships.

55.     On information and belief, the two company laptops and company iPad that Kimberling took with him when he left Panorama also contain Panorama's confidential trade secret information, including customer lists, customer contact information, information about customer needs and preferences, contractor lists, information about contractor contacts and abilities, Panorama's marketing strategies, and Panorama's business leads, business opportunities, pricing, and specific proposals to customers and potential customers.

56.     Kimberling formed Third Stage on or about April 10, 2018.  Third Stage offers consulting services similar to those offered by Panorama and competes with Panorama.

57.     Since leaving Panorama, Kimberling and Third Stage have used Panorama's trade secrets without authorization to pursue business for their own benefit.  Kimberling, for example, has used Panorama's confidential business information and trade secrets to contact multiple Panorama business partners and customers to solicit work for Third Stage.

58.     Kimberling recently contacted the management team of a large building materials company, a long-term Panorama client, and claimed he was taking Panorama's best consultants with him, which is false.  Kimberling then directly solicited business from the company by offering to put in a proposal for the very same work that Kimberling knows Panorama had been proposing.

59.     Information concerning Panorama's potential work for this building materials company, including its relationship with and contact information for the company's management team, and its business proposal to the company, is confidential and constitutes highly sensitive trade secret information belonging to Panorama.  Kimberling received this information as part of his work with Panorama and has a duty not to use or disclose such information without authorization from Panorama, which he does not have.

60.     Panorama has also recently learned that Kimberling and Third Stage are using Panorama's confidential trade secret information to solicit work from the electric utility company.  Specifically, Kimberling has been communicating with Panorama's contact at the electric utility company about the same opportunity that Kimberling attempted to divert from Panorama while he was a company manager and Managing Partner.

61.     Information concerning Panorama's potential work with the electric utility company, including its relationship with and contact information for the company's management team, and its business proposal to the company, is confidential and constitutes highly sensitive trade secret information belonging to Panorama.  Kimberling received this information as part of his work with Panorama and has a duty not to use or disclose such information without authorization from Panorama, which he does not have.

62.     On information and belief, Kimberling and Third Stage are using Panorama's trade secrets without authorization to pursue these and other business opportunities.

63.     Kimberling's and Third Stage's unauthorized use of Panorama's confidential trade secret information is causing substantial irreparable harm to Panorama's business and business reputation and will continue to do so unless stopped.

***Kimberling and Third Stage Are Making Material False Representations of Fact Concerning Their Business and Experience***

64.     Kimberling and Third Stage are promoting their new business through Third Stage's website, which contains numerous false and misleading statements of fact concerning the business and Kimberling's experience.

65.     Third Stage, for example, makes the following statements on its website, each of which is literally false:

- Over the last 20 years, Kimberling has been "involved with over 1,000 different ERP implementations."

- Kimberling has "been on the executive steering committees over 100 ERP implementations just during the last two years alone."

- "Kimberling has been an independent expert witness in over 25 lawsuits over the years."

66.     Third Stage's website also claims that Third Stage has the following entities as "clients":  Nucor, Kooyman, and Cotton Holdings.  On information and belief, this claim is literally false.

67.     Third Stage's false statements are, on information and belief, intended to, and likely will, deceive a substantial portion of consumers of ERP and OCM consulting services.

68.     Third Stage's false statements are also, on information and belief, intended to, and likely will, influence the purchasing decisions of consumers seeking ERP and OCM consulting services.

69.     Kimberling's and Third Stage's material false statements are causing substantial irreparable harm to Panorama's business through the diversion of sales and loss of goodwill and will continue to do so unless stopped.

## FIRST CLAIM FOR RELIEF
### (Breach of Duty of Loyalty)

70.     Plaintiffs incorporate by reference all allegations in this Complaint.

71.     Kimberling was an agent of Panorama and KHG under C.R.S. § 7-80-405(1).

72.     As a statutory agent of Panorama and KHG, Kimberling had a duty not to use Panorama's or KHG's property for his own purposes.

73.     As a statutory agent of Panorama and KHG, Kimberling had a duty not to acquire a material benefit from a third party in connection with actions taken on behalf of Panorama or KHG.

74.     As a statutory agent of Panorama and KHG, Kimberling had an obligation to act loyally for Panorama's and KHG's benefit in all matters connected with the agency relationship.

75.     Kimberling breached his duty of loyalty by diverting business away from Panorama, actions that benefited only himself to the detriment of KHG and Panorama.

76.     Kimberling also breached his duty of loyalty by changing the account passwords and transferring the Panorama Domain Names to himself and improperly using Panorama's and KHG's property for his own purposes.

77.     Kimberling also breached his duty of loyalty by soliciting Panorama employees to join him in a competing business, action directly contrary to the best interests of KHG and Panorama.

78.     Kimberling's actions were not conducted in good faith.

79.     Kimberling's actions constitute gross negligence and willful misconduct.

80.     Kimberling's actions have caused damages to Plaintiffs in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF
### (Breach of Fiduciary Duty–Officer)

81.     Plaintiffs incorporate by reference all allegations in this Complaint.

82.     Pursuant to the Written Consent that appointed Kimberling as an officer of Panorama, Kimberling owed duties to Panorama as an officer under the Colorado Business Corporations Act.

83.     Pursuant to C.R.S. § 7-108-401(1), Kimberling owed a duty to act in good faith and in the best interests of Panorama.

84.     Kimberling breached his duty by diverting business away from Panorama for his own benefit.

85.     Kimberling also acted directly contrary to the best interests of Panorama by changing the account passwords and transferring the Panorama Domain Names to himself and soliciting Panorama employees to compete with Panorama.

86.     Kimberling's actions were not conducted in good faith.

87.     Kimberling's actions constitute gross negligence and willful misconduct.

88.     Kimberling's actions caused damages to Plaintiffs in an amount to be determined at trial.

### THIRD CLAIM FOR RELIEF
### (Breach of Fiduciary Duty–Manager)

89.     Plaintiffs incorporate by reference all allegations in this Complaint.

90.     Kimberling was a manager of KHG and subject to the fiduciary duty not to compete with KHG as set forth in C.R.S. § 7-80-404(1)(c).

91.     Prior to his resignation, Kimberling diverted multiple business opportunities from Panorama to Envision, a company which, on information and belief, Kimberling intended to join or otherwise partner with to do business after his resignation from Panorama.

92.     Kimberling's actions to divert business away from Panorama for his own benefit were in direct competition with Panorama and consequently KHG.

93.     Kimberling's actions were not conducted in good faith.

94.     Kimberling's actions constitute gross negligence and willful misconduct.

95.     Kimberling's actions caused damages to KHG in an amount to be determined at trial.

### FOURTH CLAIM FOR RELIEF
### (Violation of Defend Trade Secrets Act, 18 U.S.C. § 1831, *et seq.*)

96.     Plaintiffs incorporate by reference all allegations in this Complaint.

97.     Panorama is the owner of trade secrets, including without limitation confidential and proprietary information concerning customer lists, customer contact information, information about customer needs and preferences, contractor lists, information about contractor contacts and abilities, Panorama's marketing strategies, and Panorama's business leads, business

opportunities, pricing, and specific proposals to customers and potential customers, all of which Panorama developed over years of effort and substantial expense.

98.     Panorama has exerted great efforts to develop its trade secrets and to protect the confidential nature of its trade secrets, including by imposing confidentiality obligations on employees and consultants, restricting access to confidential information, implementing confidentiality agreements prior to client engagements, and imposing confidentiality restrictions in other contracts, such as the Non-Disclosure Agreement.

99.     Panorama derives independent economic value from its trade secrets because they are not generally known to, and not readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.  Among other things, Panorama's trade secrets allow Panorama to provide a highly sophisticated, comprehensive consulting services and proposals for consulting work to its customers and potential customers.

100.     Kimberling and Third Stage have misappropriated Panorama's trade secrets, including by using without Panorama's consent, Panorama's confidential and proprietary information concerning Panorama's customers and customer relationships, Panorama's contractors and contractor relationships, Panorama's business leads, business opportunities, and proposals, and other highly sensitive information.

101.     At the time of Kimberling's and Third Stage's use, Kimberling and Third Stage knew or had reason to know that knowledge of the trade secrets was acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secrets.

102.     The trade secrets that Kimberling and Third Stage have misappropriated are directly related to Panorama's business, which involves clients around the country and world as part of interstate commerce.

103.     As a result of Kimberling's and Third Stage's misappropriation of Panorama's trade secrets, Panorama has suffered and continues to suffer damages in an amount to be proven at trial.

104.     In addition, as a result of Kimberling's and Third Stage's misappropriation of Panorama's trade secrets, Panorama has suffered and continues to suffer irreparable harm for which no adequate remedy at law exists, including without limitation the unauthorized use and disclosure of Panorama's trade secrets and harm to Panorama's goodwill and business reputation.

## FIFTH CLAIM FOR RELIEF
### (Violation of Uniform Trade Secrets Act, Colo. Rev. Stat. § 7-74-101, *et seq.*)

105.     Plaintiffs incorporate by reference all allegations in this Complaint.

106.     Panorama is the owner of trade secrets, including without limitation confidential and proprietary information concerning customer lists, customer contact information, information about customer needs and preferences, contractor lists, information about contractor contacts and abilities, Panorama's marketing strategies, and Panorama's business leads, business opportunities, pricing, and specific proposals to customers and potential customers, all of which Panorama developed over years of effort and substantial expense.

107.     Panorama has exerted great efforts to develop its trade secrets and to protect the confidential nature of its trade secrets, including by imposing confidentiality obligations on employees and consultants, restricting access to confidential information, implementing

18

confidentiality agreements prior to client engagements, and imposing confidentiality restrictions in other contracts, such as the Non-Disclosure Agreement.

108.    Panorama derives independent economic value from its trade secrets because they are not generally known to, and not readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.  Among other things, Panorama's trade secrets allow Panorama to provide a highly sophisticated, comprehensive consulting services and proposals for consulting work to its customers and potential customers.

109.    Kimberling and Third Stage have misappropriated Panorama's trade secrets, including by using without Panorama's consent, Panorama's confidential and proprietary information concerning Panorama's customers and customer relationships, Panorama's contractors and contractor relationships, Panorama's business leads, business opportunities, and proposals, and other highly sensitive information.

110.    At the time of Kimberling's and Third Stage's use, Kimberling and Third Stage knew or had reason to know that knowledge of the trade secrets was acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secrets.

111.    Kimberling and Third Stage willfully and maliciously misappropriated Panorama's trade secrets.

112.    As a result of Kimberling's and Third Stage's misappropriation of Panorama's trade secrets, Panorama has suffered and continues to suffer damages in an amount to be proven at trial.

113.     In addition, as a result of Kimberling's and Third Stage's misappropriation of Panorama's trade secrets, Panorama has suffered and continues to suffer irreparable harm for which no adequate remedy at law exists, including without limitation the unauthorized use and disclosure of Panorama's trade secrets and harm to Panorama's goodwill and business reputation.

### SIXTH CLAIM FOR RELIEF
**(Lanham Act False Advertising, 15 U.S.C. § 1125(a))**

114.     Plaintiffs incorporate by reference all allegations in this Complaint.

115.     Third Stage's statements concerning Kimberling's experience and Third Stage's clients constitute false or misleading representations of fact concerning Third Stage's business and services.

116.     Third Stage's use of false or misleading representations of fact in commercial advertising and promotion misrepresents the nature, characteristics, or qualities of Third Stage's business and services.

117.     Third Stage's use of false or misleading representations of fact is likely to confuse or deceive a substantial portion of the target consumer audience, or actually confuses or deceives the target consumers, at to the nature, characteristics, or qualities of Third Stage's business and services.

118.     Third Stage's false or misleading representations of fact are material because they are likely to influence the purchasing decisions of the target consumers.

119.     Third Stage's material false or misleading statements are causing harm to Panorama's business through the diversion of sales and loss of goodwill.

120.    Panorama is entitled to an award of Third Stage's profits due to any sales from the falsely or misleadingly represented services, any damages sustained by Panorama, and the costs of the action, under 15 U.S.C. § 1117.

## SEVENTH CLAIM FOR RELIEF
### (Civil Theft)

121.    Plaintiffs incorporate by reference all allegations in this Complaint.

122.    Kimberling has knowingly exercised control over the two company laptops and company iPad that Kimberling took with him when he left Panorama.

123.    Despite several demands by Panorama, Kimberling has failed and refused to return the two company laptops and company iPad to Panorama.

124.    On information and belief, Kimberling intends to deprive Panorama permanently of the use and benefit of the two company laptops and company iPad.

125.    Kimberling's failure to return Panorama's property is unlawful and is causing Panorama to suffer damages in an amount to be proven at trial.

## EIGHTH CLAIM FOR RELIEF
### (Tortious Interference)

126.    Plaintiffs incorporate by reference all allegations in this Complaint

127.    Panorama has prospective business relations with existing Panorama customers that may seek further consulting services and with potential new customers seeking consulting services.

128.    With full knowledge of Panorama's prospective business relations, Kimberling intentionally and improperly induced Panorama customers and potential customers not to engage Panorama to provide consulting services.

129.    Kimberling made these inducements improperly by using Panorama's confidential customer information, including without limitation information concerning Panorama's customer relationships, Panorama's contractors and contractor relationships, Panorama's business leads, business opportunities, and proposals.

130.    As a result of Kimberling's inducements, Panorama has suffered and continues to suffer damages in an amount to be proven at trial.

131.    In addition, as a result of Kimberling's inducements, Panorama has suffered and continues to suffer irreparable harm for which no adequate remedy at law exists including without limitation harm to Panorama goodwill and business reputation.

WHEREFORE, Plaintiffs request that the Court award the following relief:

i.      Damages to Plaintiffs in an amount to be proven at trial;

ii.     Recovery of Kimberling's and Third Stage's ill-gotten gains from misappropriating and misusing Panorama's trade secrets and confidential information and from Third Stage's false advertising;

iii.    Preliminary and permanent injunctive relief barring Kimberling and Third Stage from using or disclosing any of Panorama's confidential and trade secret information and ordering Kimberling and Third Stage to return to Panorama all of Panorama's property and all documents and materials containing Panorama's confidential and trade secret information;

iv.     Exemplary damages for Defendants' willful and malicious misconduct;

v.      Panorama's attorneys' fees and costs incurred in connection with this lawsuit;

vi.     Prejudgment and Post-judgment interest as allowed by law;

vii.    Such other and further relief as may be appropriate.

Dated:  June 1, 2018.

s/   Lucas A. Westerman

Lucas A. Westerman
BRYAN CAVE LEIGHTON PAISNER LLP
1700 Lincoln Street, Ste. 4100
Denver, CO  80203
Telephone:  303-861-7000
luke.westerman@bclplaw.com.com

Timothy M. Reynolds
BRYAN CAVE LEIGHTON PAISNER LLP
1801 13th Street, Ste. 300
Boulder, CO 80302
Telephone:  303-444-5955
timothy.reynolds@bclplaw.com

*Attorneys for Plaintiffs Panorama Consulting*
*Solutions, LLC and KHG Holdings, LLC*