## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.:  18-cv-01358-PAB-STV

PANORAMA CONSULTING SOLUTIONS, LLC, and
KHG HOLDINGS, LLC,

      Plaintiffs,

v.

ERIC KIMBERLING, and
THIRD STAGE CONSULTING GROUP LLC,

      Defendants.

---

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS (ECF NO. 18)**

---

### INTRODUCTION

Plaintiffs Panorama Consulting Solutions, LLC ("Panorama") and KHG Holdings, LLC ("KHG") (collectively, "Plaintiffs") provide enterprise and infrastructure consulting for private and public organizations.  Defendant Eric Kimberling was a KHG manager and a Panorama officer.  Kimberling breached his fiduciary duties by diverting customers away from Panorama for his own benefit, soliciting Panorama employees to join a competing business, and stealing company property.  Kimberling also failed to return two laptop computers and an iPad containing Panorama's highly sensitive confidential and trade secret information, and Kimberling and his new company, Third Stage Consulting LLC ("TSC"), are using Panorama's confidential and trade secret information unlawfully to compete with Panorama.

Defendants' motion overlooks applicable law and ignores the Complaint's factual allegations supporting each of Plaintiffs' claims.  Accordingly, the motion should be denied.

## FACTUAL BACKGROUND

**I.        Kimberling Secretly Diverted Panorama Business for His Own Benefit.**

Kimberling, Calvin Hamler, and Zarja Vanessa Davison formed Panorama in 2012. Compl. ¶¶ 18-19.  KHG is a manager-managed LLC, and is the sole member and manager of Panorama.  *Id.* ¶¶ 23, 24.  Kimberling was a manager of KHG until he resigned in April 2018. *Id.* ¶ 25.  Kimberling was also an officer of Panorama, serving as one of Panorama's Managing Partners until he resigned in April 2018.  *Id.* ¶ 26.

In late 2017, Kimberling encouraged a business relationship between Panorama and Envision Business Consulting, LLC ("Envision"), which is run by Kimberling's friend and former boss, Robert Novick ("Novick").  *Id.* ¶¶ 27-28.  After Panorama and Envision initiated discussions, Kimberling secretly began to divert Panorama projects and business leads to Envision.  *Id.* ¶¶ 29-30.  For example, instead of relying on available Panorama resources, Kimberling pushed two leads for Organizational Change Management ("OCM") consulting work to Envision.  *Id.* ¶¶ 31, 32.  When Davison found out and stepped in to prevent the work going to Envision, Novick became enraged and sent notice that Envision was terminating business discussions with Panorama.  *Id.* ¶ 33.

Despite Envision's decision to terminate its relationship with Panorama, Kimberling continued to secretly push Panorama work to Envision.  *Id.* ¶ 34-39.  Kimberling sent three Panorama business leads to Envision, one from a long-term Panorama client, for work that Panorama stood ready to provide.  *Id.* ¶ 34-36, 38.  Kimberling also told Envision it was "free to pursue" a fourth Panorama lead for OCM consulting, and proposed that Kimberling himself stay on as a subcontractor for Envision.  *Id.* ¶ 39.  Kimberling pushed this work to Envision because

he intended to join or otherwise do business with Envision after leaving Panorama.  *Id.* ¶¶ 27, 34, 39.  Kimberling has a longstanding relationship with Envision's managing partner and proposed that Envision retain him a subcontractor for work that had initially come to Panorama.  *Id.*

## II.    Kimberling Resigned and Attempted to Cover His Tracks.

Hamler confronted Kimberling in early April 2018 about the improper diversion of Panorama's business leads.  *Id.* ¶ 40.  Two days later, Kimberling gave notice that he would resign as a manager of KHG and an officer of Panorama, effective April 13, 2018.  *Id.* ¶ 41. Knowing he had been caught, and aware of his guilt, Kimberling sent a series of emails to make it appear as if he had been acting in Panorama's interest.  In one email to a business lead Kimberling had previously diverted to Envision, Kimberling said, "this is something Panorama can absolutely handle."  *Id.* ¶¶ 36, 42.  In another email, Kimberling told Envision that Panorama would now pursue the work.  *Id.* ¶¶ 31, 43.  Kimberling then attempted to purge these emails.  *Id.*

In fact, after he had been caught diverting Panorama business for his own benefit, Kimberling attempted to purge at least eight incriminating emails.  *Id.* ¶ 44.  Kimberling, for example, tried to purge one email he had sent to Novick congratulating him on the decision to terminate discussions with Panorama, and two emails that Kimberling had sent to Envision providing comprehensive notes of Kimberling's calls with a long-term Panorama client.  *Id.*

## III.   Kimberling Stole Company Property and Attempted to Poach Employees.

In April 2018, while still a KHG manager and Panorama officer, Kimberling changed the passwords on Panorama's GoDaddy account and on all of Panorama's domain names, including the www.panorama-consulting.com domain name that Panorama uses to operate its business (the "Panorama Domain Names").  *Id.* ¶ 45.  Kimberling shut off Panorama's access to its company

website and gave himself exclusive control. *Id.* Kimberling then sent a letter to Panorama threatening to shut down the company website, demanding that Panorama "stop all such use by close of business on April 13, 2018." *Id.* ¶ 46. Kimberling refused to return control over the Panorama Domain Names for more than a month, substantially interfering with Panorama's business and causing Panorama to suffer substantial expense. *Id.* 48.

While still a manager and Panorama officer, Kimberling contacted a Panorama Senior Account Executive and other Panorama employees to solicit them to leave Panorama and join Kimberling's new company. *Id.* ¶ 51-53. Kimberling even asked the Executive if she would be comfortable "poaching" Panorama clients. *Id.*

## IV.  Kimberling and TSC Are Using Panorama's Trade Secrets Unlawfully.

As Managing Partner of Panorama, Kimberling had access to Panorama's confidential trade secret information, including customer lists, customer contact information, information about customer needs and preferences, contractor lists, information about contractor contacts and abilities, Panorama's marketing strategies, and Panorama's business leads, business opportunities, pricing, and specific proposals to customers and potential customers. *Id.* ¶¶ 54, 59, 61. Panorama developed these trade secrets over years of effort and substantial expense. *Id.* ¶ 54. This information is highly valuable to Panorama because it allows the company to anticipate and meet customer needs, tailor proposals to address specific customer preferences, and maintain long term customer relationships. *Id.* ¶¶ 54, 99.

Panorama has exerted great efforts to protect the confidential nature of its trade secrets, including by imposing confidentiality obligations on employees and consultants, restricting access to confidential information internally, implementing confidentiality agreements prior to

client engagements, and imposing confidentiality restrictions in other third-party contracts. *Id.* ¶ 98. Panorama derives independent economic value from its trade secrets because they are not generally known and not readily ascertainable through proper means. *Id.* ¶ 99.

When Kimberling left Panorama, he took with him two company laptop computers and a company iPad. *Id.* ¶ 49. These devices contain Panorama's confidential information and trade secrets, including customer lists, customer contact information, information about customer needs and preferences, contractor lists, information about contractor contacts and abilities, Panorama's marketing strategies, and Panorama's business leads, business opportunities, pricing, and specific proposals to customers and potential customers. *Id.* ¶ 55. Panorama demanded that Kimberling return these company devices to Panorama, but Kimberling has failed to do so. *Id.* ¶ 49.

Since leaving Panorama, Kimberling and TSC have used Panorama's trade secrets without authorization. *Id.* ¶ 57. Kimberling recently contacted the management team of a long-term Panorama client and directly solicited business from the company by offering a proposal based on the very same work that Panorama had been proposing. *Id.* ¶ 58. Kimberling and TSC also contacted Panorama's contact at an electric utility company about the same opportunity that Kimberling had previously attempted to divert from Panorama. *Id.* ¶ 60. Information concerning Panorama's potential work for and business proposals to these companies is confidential and constitutes highly sensitive trade secret information belonging to Panorama. *Id.* ¶¶ 59, 61. Kimberling received this information as an agent of Panorama and has a duty not to use or disclose the information without authorization, which he does not have. *Id.*

**STANDARD OF REVIEW**

To survive a 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plausible claim is a one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must accept the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff, *Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002), but conclusory allegations are not entitled to be presumed true, *Iqbal*, 556 U.S. at 681.  Rule 12 does not require "detailed factual allegations." *Twombly*, 550 U.S. at 555 & n.3.  Rather, so long as the plaintiff offers sufficient factual allegations such that the right to relief is raised above the speculative level, he has met the threshold pleading standard. *Twombly*, 550 U.S. at 556.

**ARGUMENT**

**I.   Plaintiffs' Complaint States a Claim for Breach of the Duty of Loyalty Against Kimberling as a Statutory Agent of KHG (First Claim for Relief).**

The Colorado Limited Liability Company Act ("LLC Act") provides that managers in a manager-managed LLC are "agents" of the LLC.  C.R.S. § 7-80-405(1).  As a manager of KHG, Compl. ¶ 25, Kimberling was an "agent" of the company.  "[T]he agent status of a manager in a manager-managed LLC . . . provides a basis under agency law to impose a duty of loyalty." Lidstone & Sparkman, LIMITED LIABILITY COMPANIES AND PARTNERSHIPS IN COLORADO ("*Lidstone & Sparkman*"), at 117 (2017); *Spring Creek Expl. Co., LLC v. Hess Bakken Inv. II, LLC*, 2016 WL 9735145, at *13 n.19 (D. Colo. Sept. 8, 2016) (applying Restatement (Second) of Agency to a manager under C.R.S. § 7-80-405).  An agent's duties of loyalty include the duties

6

not to act as or on behalf of a party adverse to the principal, not to compete with the principal during the agency relationship, and not to use the property or confidential information of the principal for the agent's own purposes.  *See* Restatement (Second) of Agency §§ 387–398; *Jet Courier Serv., Inc. v. Mulei*, 771 P.2d 486, 496 (Colo. 1989) (applying Restatement).

Panorama is a wholly owned subsidiary of KHG.  Compl. ¶ 23.  Kimberling breached his duties of loyalty to KHG by willfully diverting Panorama business to himself and to Envision (a company Kimberling expected to do business with directly or as a subcontractor), changing Panorama's account passwords, transferring the Panorama Domain Names to himself, threatening to shut down Panorama's website, attempting to purge company email, and soliciting Panorama employees to compete with Panorama.  *Id.* ¶¶ 25, 30-39, 42-47, 51-53, 76-79.  Kimberling knew his diversion of business was wrong because he tried to purge email to cover his tracks.  *Id.* ¶ 40-44.

To avoid liability for his misconduct, Kimberling argues that the parties waived fiduciary duties in the LLC agreement.  Mot. at 6.  This argument fails.

First, the KHG LLC agreement waives duties imposed "by virtue of such person's status as a manager" of a Colorado LLC.  Mot. at 6.  Kimberling's status as an "agent" of the company provides a basis under agency law to impose a duty of loyalty, which duties are not expressly waived in the LLC agreement.  *See Lidstone & Sparkman* at 117 (An LLC agreement "that intends to modify the applicable statutory duties should also provide for corresponding modification of the duties under agency law."); *Kelly v. Blum*, No. 4516, 2010 WL 629850, at *11 (Del Ch. Feb. 24, 2010) (duties not waived absent explicit restriction in agreement).

Second, Defendants overlook that the LLC Act does not permit blanket waivers of fiduciary duties.  Rather, the LLC Act provides that duties may be eliminated by an operating agreement only "as long as such provision is not manifestly unreasonable."  C.R.S. § 7-80-108(1.5).  The LLC Act also allows the Court to limit, construe, and apply the waiver provision in a manner that is valid and enforceable.  C.R.S. § 7-80-108(2.5)(b).  Defendants' reading of the waiver clause as a blanket waiver of all duties would render the clause manifestly unreasonable.  *See* 1 Colo. Prac., Methods of Practice § 5:25 (7th ed.) (wholesale elimination of duty of loyalty would be manifestly unreasonable).  At a minimum, as an agent of the company, Kimberling had a duty to act in good faith and not to harm the company intentionally.  *McGivney v. Christmas*, 353 P.2d 373, 374 (Colo. 1960) ("[I]t is the duty of the agent to act with the utmost good faith and loyalty on behalf of his principal.").  Kimberling breached these duties by willfully diverting company business for his own benefit, hijacking and threatening to shut down the company's website, and soliciting employees.  He should be held accountable for his misconduct.

## II.    Plaintiffs' Complaint States a Claim for Breach of Fiduciary Duty Against Kimberling as an Officer of Panorama (Second Claim for Relief).

Kimberling was an officer of Panorama, serving as a Managing Partner through April 13, 2018.  *Id.* ¶ 26.  The LLC Act gives parties maximum flexibility within the law to shape their LLC agreement.  *Condo v. Conners*, 266 P.3d 1110, 1116 (Colo. 2011).  Here, the parties contractually agreed in the Panorama LLC Agreement that officers "have responsibility for the management of . . . the operations of the Company, ***and act as 'agents' of the Company*** in carrying out such activities."  ECF No. 18-2, Page 7 of 13, § 9.3 ("emphasis added").

As discussed above, an agent's duties of loyalty include the duties not to act adverse to the principal, not to compete with the principal during the agency relationship, and not to use the

property or confidential information of the principal for the agent's own purposes. *See* Argument § I, *supra*, at 6-7. Kimberling breached his duties by willfully diverting Panorama business to himself and Envision for his own benefit, hijacking the Panorama Domain Names, threatening to shut down Panorama's website, attempting to purge company email, and soliciting Panorama employees. *Id.* ¶¶ 25, 30-39, 42-47, 51-53, 84-87. Kimberling did all this while serving as an officer of the company, and he knew his actions were improper because he tried to cover them up. *Id.* ¶ 40-44.

Defendants' argument that LLC officers somehow owe no fiduciary duties is contrary to the provisions of the Panorama LLC agreement and has no support in the law. The Panorama LLC agreement expressly makes Kimberling an "agent" of the company. ECF No. 18-2, Page 7. Colorado law imposes duties on agents to act in the interest of their principals, not in their own self-interest. *Jet Courier Serv.*, 771 P.2d at 492. Moreover, courts routinely hold that LLC officers owe fiduciary duties to the LLC. *See, e.g., Aquent LLC v. Stapleton*, 65 F. Supp. 3d 1339, 1348 (M.D. Fla. 2014) ("Fiduciary duties apply to officers of limited liability companies"); *ZRii, LLC v. Wellness Acquisition Grp., Inc.*, No. 4374-VCP, 2009 WL 2998169, at *11 (Del. Ch. Sept. 21, 2009) (holding that LLC officers owe fiduciary duties to the company). Finally, the Panorama LLC Agreement does not waive fiduciary duties for officers. *See* ECF No. 18-2.

**III.    Plaintiffs' Complaint States a Claim for Breach of Fiduciary Duty Against Kimberling as a Manager of KHG (Third Claim for Relief).**

LLC managers owe the company statutory duties of care and loyalty, and good faith and fair dealing. C.R.S. § 7-80-404(1)-(3). Kimberling breached his fiduciary duties to KHG, the sole owner of Panorama, by willfully diverting Panorama business opportunities to himself, taking control of Panorama's domain name accounts and websites, threatening to shut down the

websites, and soliciting Panorama employees.  *Id.* ¶¶ 25, 30-39, 42-47, 51-53.  Kimberling's argument that the parties waived all fiduciary duties in the KHG LLC agreement fails for the reasons discussed above.  *See* Argument, § I, *supra*, at 7-8.

**IV.    Plaintiffs' Complaint States a Claim for Kimberling's and TSC's Violation of the Federal Defend Trade Secrets Act ("DTSA") and the Colorado Uniform Trade Secrets Act ("UTSA") (Fourth and Fifth Claims for Relief).**

To prevail on a claim of trade secret misappropriation under the DTSA and UTSA, Plaintiffs must show the existence of a trade secret and misappropriation by Defendants.  *See* 18 U.S.C. § 1836(b)(1); C.R.S. § 7-74-102(2) and (4); *Arctic Energy Servs., LLC v. Neal*, No. 18-cv-00108-PAB-KLM, 2018 WL 1010939, at *2 (D. Colo. Feb. 22, 2018).[1]

**A.    Plaintiffs have alleged valid trade secrets under the DTSA and UTSA.**

A "trade secret" is "information" that (1) is not "generally known" or "readily ascertainable"; (2) has "value" as a result of its secrecy; and (3) is the subject of "reasonable measures" under the circumstances to protect its secrecy.  18 U.S.C. § 1839(3)(A), (B); C.R.S. § 7-74-102(4) (stating same definition).  A "trade secret" may include "all forms and types" of business information, including methods, techniques, processes, and procedures.  *Id.*

Contrary to Defendants' argument, Mot. at 8, trade secrets need not be pled with specificity.  Rather, "trade secret allegations are adequate where the information and the efforts to maintain its confidentiality are described in broad terms."  1 Trade Secrets Law § 4:7 (2018) (courts uniformly hold that "trade secrets need not be disclosed in detail in a complaint"); *Sleekez, LLC v. Horton*, No. CV 16-09-BLG-SPW-TJC, 2017 WL 1906957, at *4 (D. Mont.

---

[1] Defendants do not contest that the alleged trade secrets are related to a service used in interstate or foreign commerce as required under 18 U.S.C. § 1836(b)(1).  *See* Compl. ¶ 102.

Apr. 21, 2017) (rejecting a specificity requirement for pleading DTSA claims).

Here, Plaintiffs have alleged ownership of the following trade secrets, which they developed over years of effort and at significant expense: customer lists, customer contact information, information about customer needs and preferences, contractor lists, information about contractor contacts and abilities, Panorama's marketing strategies, and Panorama's business leads, business opportunities, customer pricing, and specific proposals to customers and potential customers.  Compl.  ¶¶ 54, 59, 61, 97.  These are not mere "buzzwords" as Defendants argue, but are protectable trade secrets under the DTSA and UTSA.  *See Arctic Energy*, 2018 WL 1010939, at *2 (noting broad definition of "trade secret"); *Sleekez*, WL 1906957, at *4 (marketing strategies, industry contracts, and customer contacts are protectable trade secrets).

Plaintiffs have also alleged facts demonstrating the value of these trade secrets and Plaintiffs' reasonable measures to protect their secrecy, including confidentiality obligations on employees and consultants, restricting access to confidential information internally, implementing confidentiality agreements prior to client engagements, and imposing confidentiality restrictions in other third-party contracts.  Compl. ¶¶ 54, 98, 99.  Thus, Plaintiffs have alleged facts to show ownership of protectable trade secrets.

### B.    Plaintiffs have alleged misappropriation by Defendants.

Plaintiffs' factual allegations also demonstrate Defendants' misappropriation. Defendants' motion focuses only on the "improper means" definition of misappropriation.  Mot. at 9-10.  Misappropriation under both the DTSA and UTSA also includes the "[d]isclosure or use of a trade secret" without consent by a person who, at the time of disclosure or use, "knew or had reason to know that such person's knowledge of the trade secret was . . . [a]cquired under

circumstances giving rise to a duty to maintain its secrecy or limit its use." C.R.S. § 7-74-102(2)(b)(II)(B); 18 U.S.C. § 1839(5)(B)(ii)(II) (same definition).

The Complaint here alleges facts showing Kimberling's and TSC's use of Plaintiffs' trade secrets without consent, including two specific examples where Kimberling used Panorama's confidential customer information and business proposals to solicit business for TSC. Compl. ¶¶ 58-61. Kimberling acquired this information under circumstances giving rise to a duty to maintain its secrecy. He was a Panorama officer and agent, and he received the trade secret information described in the Complaint as part of his work for Panorama, including on the two company laptops and iPad that he used while working for the company (which he has failed to return despite Panorama's demand that he do so). Compl. ¶¶ 26, 49, 54-55, 58-61.

As an officer, Kimberling was aware of Panorama's efforts to develop its trade secrets and to keep them confidential, including through policies restricting access to Panorama's trade secrets and through employee and third-party confidentiality agreements. *Id.* ¶¶ 26, 54, 98-99, 101. Kimberling demonstrated such awareness by attempting to purge incriminating email where he had shared confidential business information with Envision. *Id.* ¶ 44. These factual allegations state a claim for misappropriation. *See, e.g., Arctic Energy*, 2018 WL 1010939, at *3 (evidence of deception and removal of confidential files); *Blue Star Land Servs. LLC v. Coleman*, 2017 WL 6210901, at *4 (W.D. Okla. Dec. 8, 2017) (noting company officer's "presumed awareness" of company confidentiality policies).

## V.     Plaintiffs' Complaint States a Claim for False Advertising (Sixth Claim for Relief).

Defendants' argument for dismissal of Plaintiffs' False Advertising claim overlooks the difference between implied and literal falsity. Mot. at 10-12 (relying on *Vincent v. Utah Plastic*

*Surgery Soc.*, 621 Fed. Appx. 546, 549-550 (2015), which addresses claim of implied falsity). With implied falsity, the plaintiff must show that the defendant's representation is likely to mislead and confuse consumers. *Netquote, Inc. v. Byrd*, No. 07-cv-00630–DME–MEH, 2008 WL 5225880, at *3 (D. Colo. Dec. 15, 2008). "With literal falsity, however, a plaintiff need not present evidence of consumer deception." *Electrology Lab., Inc. v. Kunze*, 169 F. Supp. 3d 1119, 1168 (D. Colo. 2016). Similarly, in cases of intentional deception, "there is a presumption of consumer confusion which relieves a plaintiff of any obligation to present evidence of likely confusion." *Id.* Finally, a plaintiff may obtain relief "without evidence of injury if it can demonstrate literal falsity." *Netquote*, 2008 WL 5225880, at *4.

Here, Plaintiffs allege that Defendants' factual misrepresentations are "literally false" and that Defendants intended to deceive consumers. Compl. ¶¶ 65, 66, 67. Because Plaintiffs allege literal falsity and intent to deceive, they need not show additional facts demonstrating a likelihood of consumer confusion or injury. Defendants challenge no other element of the claim.

## VI.    The Complaint States a Claim for Civil Theft (Seventh Claim).

Civil theft requires proof that the defendant (1) knowingly obtained control over the owner's property without authorization; and (2) did so with the specific intent to permanently deprive the owner of the benefit of the property. *Itin v. Ungar*, 17 P.3d 129, 134 (Colo. 2000). Intent may be inferred from conduct or circumstances. *People v. Cohn*, 160 P.3d 336, 346 (Colo. App. 2007). In the case that Defendants rely on, *Procom Supply, LLC v. Langner*, 2012 WL 4856724 (D. Colo. Oct. 11, 2012), the court was unable to infer intent because the allegations in that case described neither the nature of the allegedly stolen property nor the circumstances of the transaction. *Id.* at *5. Here, by contrast, when Kimberling resigned, he took with him two

company laptops and an iPad that Panorama had provided to him while he was working for the company, and then failed to return the two laptops and iPad despite Panorama's demands that he do so.  Compl. ¶¶ 48-49, 122-123.  These facts demonstrate Kimberling's intent to permanently deprive Panorama of its property.

**VII.    The Complaint States a Claim for Tortious Interference (Eighth Claim).**

To establish tortious interference with prospective business relations, Plaintiffs must show: "(1) improper conduct with (2) the intention to induce or cause a third party not to enter into or continue business relations with the plaintiff, and (3) defendant actually induced or caused such result."  *Nutritional Biomimetics, LLC v. Empirical Labs Inc.*, No. 16-cv-01162-KMT, 2018 WL 2567872, at *4 (D. Colo. Apr. 24, 2018).

Defendants seek to add an additional element, arguing that Plaintiffs must also allege a likelihood that a contract would have resulted.  Mot. at 13.  Defendants, however, offer no authority for their argument and cite no case addressing Rule 12.  *See Klein v. Grynberg*, 44 F.3d 1497, 1499 (10th Cir. 1995) (post-trial motion); *Plaza Esteban v. La Casa Nino, Inc.*, 738 P.2d 410, 411 (Colo. App. 1987) (judgment), *rev'd on other grounds*, 762 P.2d 669 (Colo. 1988).  Moreover, Plaintiffs' factual allegations show a likelihood of contract.  For example, Panorama was actively working on a proposal with a "long-term" client when Kimberling used Panorama's confidential information to solicit the business for TSC.  Compl. ¶ 58.  Potential work with a long-term client supports a reasonable likelihood that a contract would have resulted.  *See L-3 Commc'n. Corp. v. Jaxon Eng'g & Maint., Inc.*, 863 F. Supp. 2d 1066, 1086 (D. Colo. 2012) (allegations that plaintiff was incumbent provider was sufficient to show the reasonable probability of obtaining future contracts).

Defendants also argue that Plaintiffs' tortious interference claim is preempted by the UTSA.  Mot. at 14.  However, where "a tortious interference claim relies on the theft of information or property that does not rise to the level of a trade secret, [UTSA] is not implicated and a common law claim can be asserted."  *Wolf Auto Center Sterling, LLC v. Schadegg*, 2016 WL 10570867, at *3 (D. Colo. Oct. 31, 2016).  Here, Plaintiffs allege that Kimberling used "confidential customer information" to improperly interfere with Panorama's prospective business relations.  Compl. ¶ 129.  Thus, while Plaintiffs also claim trade secret protection, Plaintiffs' claim for tortious interference does not depend on a finding of trade secrets but, rather, on the existence of confidential information.  Therefore, this claim is not preempted.  *See Powell Prods., Inc. v. Marks*, 948 F. Supp. 1469, 1474 (D. Colo. 1996) (tortious interference claim not preempted if defendants could be liable "even if they did not misappropriate any trade secrets from plaintiff").

## CONCLUSION

For the reasons provided above, the Court should deny Defendants' motion.

Dated:  August 10, 2018.


/Timothy M. Reynolds
Timothy M. Reynolds
BRYAN CAVE LEIGHTON PAISNER LLP
1801 13th Street, Ste. 300
Boulder, CO 80302
Telephone:  303-444-5955
timothy.reynolds@bclplaw.com

Lucas A. Westerman
BRYAN CAVE LEIGHTON PAISNER LLP
1700 Lincoln Street, Ste. 4100
Denver, CO  80203
Telephone:  303-861-7000
luke.westerman@bclplaw.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 10, 2018, a true and correct copy of the foregoing **PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS (ECF NO. 18)** was filed with the Clerk of Court using the CM/ECF system which will service such filing on the following:

Jennifer Osgood
BURNS FIGA & WILL
6400 South Fiddlers Green Circle, Ste. 1000
Greenwood Village, CO  80111
josgood@bflaw.com

Brian Weinthal
Daniel R. Saeedi
TAFT STETTINIUS & HOLLISTER LLP
111 East Wacker Drive, Ste. 2800
Chicago, IL  60601
bweinthal@taftlaw.com
dsaeedi@taftlaw.com


*s/Rob Bower*
_____

11989667.5