**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.:  18-cv-01358-PAB-STV

PANORAMA CONSULTING SOLUTIONS, LLC and
KHG HOLDINGS, LLC,

        Plaintiffs,

                      v.

ERIC KIMBERLING and
THIRD STAGE CONSULTING GROUP, LLC,

        Defendants.

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

Defendants submit this reply in support of their pending motion to dismiss the complaint, *see* ECF No. 18, and in opposition to Plaintiffs' response to the motion. *See* Pls.' Resp. to Defs.' Mot. to Dismiss ("Pls.' Resp."), ECF No. 19 (filed Aug. 10, 2018). Although Plaintiffs' response asks the Court to withhold dismissal, Plaintiffs fail to refute key arguments warranting this relief. Moreover, while Plaintiffs contend that certain buzzwords or catchphrases are enough to raise the right to relief "above the speculative level," Plaintiffs repeatedly fail to distinguish authorities showing that mere conclusory allegations are insufficient to maintain the causes of action they hope to assert. Accordingly, as argued here and in the foregoing motion, the Court should dismiss Plaintiffs' complaint in its entirety and with prejudice.

**I.     THE COURT SHOULD DISMISS PLAINTIFFS' BREACH OF DUTY CLAIMS**

The disposition of Counts I, II, and III of Plaintiffs' complaint turns on one issue: whether Defendant Kimberling owed a duty either to KHG as a "managing member" or to Panorama as an "officer." While Plaintiffs devote *pages* of their response to criticizing Mr.

Kimberling's performance in these roles, the facts alleged by Plaintiffs are largely irrelevant to the question of whether a legal duty was owed in the first place.

### A.     The LLC Agreements Eliminated the Duties Allegedly Breached

Notwithstanding sweeping language in the KHG and Panorama LLC Agreements that eliminates all duties to "the fullest extent permitted by Law and Section 7-80-108 of the [LLC] Act," Plaintiffs argue that these broad waivers are inapplicable to their fiduciary duty claims in Counts I and III of the complaint. Plaintiffs also argue that in addition to the duties relinquished under the LLC Act, Defendant Kimberling simultaneously owed separate and distinct duties to Plaintiffs under principles of agency law. These arguments are without merit.

Under the LLC Act, if management of an LLC is vested in its managers, each manager is an agent of the LLC. C.R.S. § 7-80-405(1)(b). However, no Colorado court has used agency law as a basis for imposing fiduciary duties in the limited liability company context. Lidstone & Sparkman, *Limited Liability Companies and Partnerships in Colorado* 117 (Cont. Legal Education in Colorado, Inc. 2d ed. 2017). The one case offered by Plaintiffs in support of this idea – *Spring Creek Expl. Co., LLC v. Hess Bakken Inv. II*, *LLC* – does not address fiduciary duty claims, but merely reiterates that a manager of a limited liability company is an agent of the company. *See* 2016 WL 9735145, at *13 n.19 (D. Colo. Sept. 8, 2016).

Regardless, even if the Colorado courts recognized such an obligation, those duties were expressly waived through the KHG and Panorama LLC Agreements. Contrary to Plaintiffs' argument, the LLC Agreements waived *all* duties – including any duty "that may be imposed by Law." Ex. A at 20, ¶ 10.3; Ex. B at 6, ¶ 9.2. In *Kelly v. Blum* (cited by Plaintiffs for the proposition that duties owed are not waived absent a restriction in an operating agreement), the purported waiver language at issue was not a "waiver" at all. *See* 2010 WL 629850, at *11 (Del. Ch. Feb. 24, 2010). On the contrary, the operating agreement read as follows:

2

> [i]n carrying out their duties hereunder, the Managers shall not be liable for money damages for breach of fiduciary duty to the Company nor to any Member for their good faith actions or failure to act ... but only for their own willful or fraudulent misconduct or willful breach of their contractual or fiduciary duties under this Agreement.

*Id.* Based on the foregoing paragraph, the Delaware Chancery Court found that the language at issue did not waive or limit any duty, but rather suggested that the parties intended for traditional fiduciary duties to apply. *Id.* This is a stark contrast to the LLC Agreements here, in which the parties unequivocally waived "any duty, fiduciary or otherwise . . . that may be imposed by Law." Ex. A at 20, ¶ 10.3; Ex. B at 6, ¶ 9.2.

As a "backstop" to their arguments, Plaintiffs contend that a waiver of all duties would be manifestly unreasonable *per se*, and thus invalid under C.R.S. § 7-80-108(1.5). Plaintiffs offer no support or authority for this claim, nor do they engage in any discussion of how or why the waiver contained in the LLC Agreements would run afoul of the statute. Putting these points aside, Plaintiffs' assertion that a waiver of all duties is "manifestly unreasonable" is contrary to the plain language of C.R.S. § 7-80-108(1.5), which only prohibits an operating agreement from eliminating the obligation of good faith and fair dealing. C.R.S. § 7-80-108(2)(d). This obligation is contractual and does not rise to the level of a fiduciary duty for which a tort claim of "breach" can be asserted. *See Decker v. Browning-Ferris Indus. of Colorado, Inc.*, 931 P.2d 436, 446 (Colo. 1997) (rejecting implied duty of good faith as an independent tort). As a result, Plaintiffs' fallback arguments are insufficient to preserve their claims in Counts I and III.

### B.     Plaintiffs' Response Brief May Not Amend or Reform Their Complaint

In Count II of the complaint, Plaintiffs allege that as an "officer" of Panorama, Defendant Kimberling owed duties to Panorama under the CBCA. *See* Compl. ¶ 82. Yet, as noted in Defendants' motion to dismiss, the Panorama LLC Agreement does not expressly state the duties of an "officer," and does not incorporate the duties prescribed to an officer of a corporation

3

under C.R.S. § 7-108-401(1).  Nevertheless, in their response, Plaintiffs argue that Defendant Kimberling's duties arose not out of C.R.S. § 7-108-401(a), but rather from his role as "agent" of Panorama.  This argument – which is contrary to the allegations appearing in Count II – cannot serve as a basis to refute Defendants' request for dismissal.  *See Jojola v. Chavez,* 55 F.3d 488, 494 (10th Cir.1995) (holding that a court is limited to assessing the legal sufficiency of the allegations contained within the four corners of the complaint) (citation omitted); *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1107 (7th Cir.1984) (holding that "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss") (citations omitted); *Wilson v. Jenks*, 2014 WL 6515336, at *4 (D. Colo. Nov. 20, 2014).  Accordingly, without a viable argument to protect it, Count II of Plaintiffs' complaint should be dismissed.

**II.    THE COURT SHOULD DISMISS PLAINTIFFS' TRADE SECRET CLAIMS**

Under either the federal Defend Trade Secrets Act ("DTSA") or the Colorado Uniform Trade Secrets Act ("CUTSA"), Plaintiffs have failed to allege an actionable trade secret, as they cannot point to specific information that is secret and of value.  *See* C.R.S. §§ 7-74-102(4).  To refute this charge, Plaintiffs assert that for purposes of the complaint, all they must do is refer to general categories of information (*e.g.*, "information about contractor contacts") and then simply conclude that each of these categories is a "trade secret."  This is wrong.  Indeed, under *Twombly* and *Iqbal*, "a plaintiff must plead facts, not conclusions, in order to avoid dismissal under Rule 12(b)(6)."  *Ciena Comms., Inc. v. Nachazel*, 2010 WL 3489915, at *4 (D. Colo. Aug. 31, 2010).

Acknowledging Defendants' challenge, Plaintiffs point to *Arctic Energy Servs., LLC v. Neal*, 2018 WL 1010939 (D. Colo. Feb. 22, 2018), but *Arctic* is not a Rule 12(b)(6) case, and does not hold that a plaintiff may use conclusory buzzwords or catchphrases to satisfy the pleading standards established under *Twombly* and *Iqbal*.  Plaintiffs also cite *SleekEZ, LLC v. Horton*, 2017 WL 1906957 (D. Mont. Apr. 21, 2017) – a Montana case that Plaintiffs claim

4

allows them to describe their trade secrets in "general terms." However, even a cursory review of the pleadings in *SleekEZ* demonstrates a more exacting level of detail than the allegations in the instant case. *See SleekEZ* Am. Compl., No. 16-cv-9, ECF No. 34, ¶¶ 8-10 (describing the alleged trade secrets as "unique and innovative custom-manufactured grooming tools for horses and other animals utilizing SleekEZ's unique and proprietary handle, adhesion, and blade"). Here, the Court is left to guess at what information is implicated by phrases such as "information about contractor abilities" and other nonspecific references appearing in the complaint.

Notwithstanding this defect, Plaintiffs fail to show that Defendant Kimberling misappropriated a purported trade secret under either DTSA or CUTSA. In their response, Plaintiffs suggest there were three categories of trade secrets taken by Mr. Kimberling. The first two of these categories included "contact information" and "relationships" that Plaintiffs maintained in connection with former customers. *See* Pls.' Resp. at 12. But these things are not "trade secrets" that can be stolen for the purposes of DTSA or CUTSA. "Contact information" is publicly available, whereas a "relationship" is an intangible that is not defined as a protectable trade secret under either DTSA or CUTSA. It would thus be impossible for Mr. Kimberling to "misappropriate" these items even if Plaintiffs could show they qualified as trade secrets.

The same is true of Plaintiffs' claim that their previous "business proposals" to clients contained trade secrets. *See id.* Previously-disclosed proposals to clients are not trade secrets *precisely because* they have been disclosed. *See Applied Indus. Materials Corp. v. Brantjes*, 891 F. Supp. 432, 437-38 (N.D. Ill. 1994); *see also Harvey Barnett, Inc. v. Shidler*, 143 F. Supp. 2d 1247, 1252 (D. Colo. 2001) (declining to recognize a trade secret where it was disclosed to members of the public and no longer secret). Plaintiffs have thus failed to allege either a trade secret or the subsequent misappropriation of that trade secret by Mr. Kimberling.

5

Finally, Plaintiffs fail to show the required wrongful intent necessary to proceed under DTSA or CUTSA. *See* 18 U.S.C. § 1839(5); C.R.S. 7-74-102(2). In fact, Plaintiffs' entire case for wrongful intent rests on the idea that Mr. Kimberling retained two laptop computers and an iPad after his employment with Plaintiffs had ended. However, mere possession of computing equipment does not equate to wrongful intent to steal trade secrets. *Cf. Arctic Energy,* 2018 WL 1010939, at *3 (finding intent based on illegal downloads, vice mere holdover possession). Plaintiffs are thus unable to show misappropriation of a trade secret by wrongful means, and their associated claims under DTSA and CUTSA in Counts IV and V should be dismissed.

## III. THE COURT SHOULD DISMISS PLAINTIFFS' LANHAM ACT CLAIM

Plaintiffs' only argument in favor of the survival of their Lanham Act claim in Count VI is "literal falsity." Plaintiffs decline to address Defendants' arguments concerning customer confusion or damages, which alone are fatal. *See Vincent v. Utah Plastic Surgery Soc.,* 621 Fed. Appx. 546, 551 (10th Cir. 2015) (dismissing a literal falsity claim for failure to show causation and damages). Yet, even assuming Plaintiffs were not required to establish each and every element of this cause action, their claim under the Lanham Act would still fail.

A plaintiff alleging literal falsity is required to specify why it knows (and how the Court can infer) that an advertisement is literally and objectively false, as opposed to merely opinion, puffery, or truth. *See Intermountain Stroke Center, Inc. v. Intermountain Health Care, Inc.*, 638 Fed. Appx. 778 (10th Cir. 2016). In fact, the case cited by Plaintiffs, *Netquote Inc. v. Byrd*, 2008 WL 5225880 (D. Colo. Dec. 15, 2008), shows the challenges associated with advancing a literal falsity claim under the Lanham Act. *See id.* (rejecting the claim). Here, Plaintiffs have not provided the necessary context for this Court to infer the literal falsity of the statements appearing on Defendants' website, let alone any related customer confusion or damages. The Court should therefore dismiss Plaintiffs' claim under the Lanham Act in Count VI.

## IV. THE COURT SHOULD DISMISS PLAINTIFFS' CIVIL THEFT CLAIM

To maintain a cause of action for civil theft, a plaintiff must allege: "(1) that the defendant knowingly obtained control over the owner's property without authorization; and (2) that he or she did so with the specific intent to permanently deprive the owner of the benefit of the property." *Itin v. Ungar*, 17 P.3d 129, 134 (Colo. 2000) (citing C.R.S. § 18-4-401(1)). As Defendants pointed out in their motion to dismiss, the items at issue (two laptop computers and an iPad) were freely given to Mr. Kimberling, *see* Compl. ¶ 49, so there is no argument that he obtained control over these devices "without authorization" (much less by "theft, robbery, or burglary," as required by C.R.S. § 18-4-405).

At the same time, the entirety of Plaintiffs' evidence regarding "permanent deprivation" is the claim that Mr. Kimberling "failed to return the two laptops and iPad despite Panorama's demands that he do so." Pls.' Resp. at 13-14. Without more, however, this allegation provides no context or basis for inferring permanent deprivation – which this Court has found to be fatal to the assertion of a claim for civil theft. *See Procom Supply, LLC v. Lagner*, No. 12-00391, 2012 WL 4856724, at *6 (D. Colo. Oct. 11, 2012). While Plaintiffs make a halfhearted attempt to distinguish the *Procom* case, *see* Pls.' Resp. at 13-14, this Court found in *Procom* that context was essential to justify an inference of permanent deprivation, and that where (as here) a civil theft count relied only on the formulaic recitation of this element, the associated cause of action had to be dismissed. *See Procom*, 2012 WL 4856724, at *6 (D. Colo. Oct. 11, 2012). As in *Procom*, this Court should dismiss Plaintiffs' civil theft claim.

## V. THE COURT SHOULD DISMISS PLAINTIFFS' INTERFERENCE CLAIM

To avoid preemption of their tortious interference claim, Plaintiffs offer a semantic argument supported by neither applicable precedent nor the allegations set forth in the complaint. According to Plaintiffs, in addition to misappropriating "trade secret" information,

7

Defendant Kimberling also misappropriated certain "confidential" information as well. *See* Pls.' Resp. at 15. Although no discussion of the operative difference is provided, the suggestion appears to be that "trade secret" information is entitled to protection under CUTSA, whereas "confidential" information is not. *See id*. On this basis, Plaintiffs contend that their tortious interference claim should go forward, as the "improper" conduct required to assert this cause of action does not rely solely on the identification of a trade secret for the purposes of assessing preemption under *Wolf Auto Center* and its progeny. *See Wolf Auto Ctr. Sterling, LLC v. Schadegg*, No. 15-01035, 2016 WL 10570867, at *3 (D. Colo. Oct. 31, 2016) (Slip Op.).

As a threshold matter, the idea of a separation between "confidential" and "trade secret" information is an invention of Plaintiffs' response brief, as Plaintiffs' complaint repeatedly invokes the phrase "confidential trade secret information" (without distinction) to describe all categories of information that Mr. Kimberling is alleged to have misappropriated. *See, e.g.*, Compl. ¶¶ 54, 55, 60, 63. More importantly, although Plaintiffs now argue that "confidential customer information" does not rise to the level of a "trade secret," Plaintiffs unequivocally categorize customer information as a "trade secret" in their complaint. *See id*. ¶¶ 54, 55, 97, 106, 109. Indeed, the paragraph of the complaint identifying the "trade secret" information that was allegedly misappropriated by Mr. Kimberling is virtually identical to the paragraph of the complaint that identifies the alleged "improper" acts that are necessary to assert a tortious interference claim. *Compare* Compl. ¶ 109, with Compl. ¶ 129. There is thus no argument that the complaint draws a distinction between "confidential" and "trade secret" information.

But even if this were the case, Plaintiffs cite no authority authorizing a statutory or tort cause of action for the misappropriation of business information that does not rise to the level of a "trade secret." In addition, Plaintiffs' complaint identifies no contract, covenant, or other

8

agreement executed by Mr. Kimberling that would make it wrongful or improper for him to possess, handle, or even share information that does not qualify as a "trade secret." Consequently, even if the Court were to accept Plaintiffs' invitation to distinguish between "confidential" and "trade secret" information, Plaintiffs would still be unable to identify any "improper" conduct necessary to sustain this claim.  *See MDM Grp. Assocs., Inc. v. CX Reinsurance Co.*, 165 P.3d 882, 886 (Colo. App. 2007).  The result is that Plaintiffs' tortious interference claim is preempted under CUTSA.

And yet, even if not preempted, Plaintiffs' tortious interference claim still fails. Plaintiffs' response confirms that the only recovery sought in the complaint is for interference with prospective economic opportunities.  *See* Pls.' Resp. at 14.  Where a claim of tortious interference is based on a prospective contract or economic opportunity, a plaintiff must show a reasonable likelihood or reasonable probability that a contract would have resulted absent the defendant's conduct.  *Klein v. Grynberg*, 44 F.3d 1497 (10th Cir. 1995).  Citing to *L-3 Commc'n Corp. v. Jaxon Eng'g & Maint. Inc.*, 863 F. Supp. 2d 1066 (D. Colo. 2012), Plaintiffs argue that "[p]otential work with a 'long-term' client supports a reasonable likelihood that a contract would have resulted."  *See* Pls.' Resp. at 14.  Plaintiffs' reliance on this case is badly misplaced.

In *L-3*, an incumbent provider of surge protection services ("L-3") argued that a breakaway corporation started by a former employee had improperly interfered with L-3's efforts to bid on the renewal of a contract for services that L-3 had been providing for years.  *See L-3 Commc'n Corp. v. Jaxon*, 863 F. Supp. 2d at 1072.  L-3 further alleged that due to a conspiracy between the spin-off corporation and an insider at the client receiving services, the defendants had actively "rigged" the bidding process to ensure either that L-3 was not notified of the opportunity to submit a bid or not provided the full information necessary to submit a complete

9

bid. *Id*. at 1073. Accordingly, in allowing L-3's interference claim to proceed, this Court found that L-3 was a current holder of a contract to provide specific services that likely would have been renewed but for defendants' conspiracy to "manipulate" the bidding process. *Id*. at 1086.

*L-3* is thus inherently distinguishable from this case. Plaintiffs' complaint fails to allege they were incumbent service providers under an existing contract scheduled for renewal. In fact, the complaint does not allege that the "potential work" for which Plaintiffs hoped to compete was even related to work that Plaintiffs had previously performed for the client. Any allegations of conspiracy are absent, and the complaint fails to assert that the "potential work" in question was ultimately awarded to Defendants (as opposed to other competitors who participated in the bidding process). In sum, Plaintiffs fail to demonstrate a reasonable likelihood or probability that a contract would have resulted absent Defendants' conduct. *Klein v. Grynberg*, 44 F.3d at 1507. The Court should therefore dismiss Plaintiffs' tortious interference claim.

## CONCLUSION

For the reasons set forth above and in the foregoing motion to dismiss, Defendants respectfully request the Court to dismiss this case in its entirety and with prejudice.

Dated: August 24, 2018

By:    s/ Brian Weinthal
      One of Defendants' Attorneys

Jennifer Osgood
BURNS FIGA & WILL
6400 South Fiddlers Green Circle
Suite 1000
Greenwood Village, Colorado 80111
Telephone: (303) 796-2626
E-mail: josgood@bfwlaw.com

Brian Weinthal
Daniel R. Saeedi
TAFT STETTINIUS & HOLLISTER LLP
111 East Wacker Drive
Suite 2800
Chicago, Illinois 60601
Telephone: (312) 836-4074
E-mail: bweinthal@taftlaw.com

*Counsel for Defendants Eric Kimberling and Third Stage Consulting Group, LLC*

23353204.1