# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.: 18-cv-01358-PAB-STV

PANORAMA CONSULTING SOLUTIONS, LLC and
KHG HOLDINGS, LLC,

Plaintiffs,

v.

ERIC KIMBERLING and
THIRD STAGE CONSULTING GROUP, LLC,

Defendants.

---

ERIC KIMBERLING,

Counterclaim Plaintiff,

v.

PANORAMA CONSULTING SOLUTIONS, LLC,
KHG HOLDINGS, LLC,
CALVIN HAMLER,
VANESSA DAVISON, and
SAMUEL CLARKE,

Counterclaim Defendants.

---

## DEFENDANTS' PARTIAL ANSWER AND ASSERTION OF COUNTERCLAIMS

Defendants Eric Kimberling and Third Stage Consulting Group, LLC (collectively, "Defendants") submit this partial answer in response to the First Amended Complaint filed by Plaintiffs Panorama Consulting Solutions, LLC and KHG Holdings, LLC (collectively, "Plaintiffs") on February 27, 2019.  *See* Pls.' 1st Am. Compl., ECF No. 46-1 (filed Feb. 27, 2019). That date (*i.e.*, February 27, 2019) was the deadline previously set by the Court for the amendment of pleadings or the joinder of additional parties.  *See* Scheduling Order, ECF No. 38 (entered

Oct. 23, 2018).   In an effort to avoid any potential arguments of waiver, Defendants filed counterclaims on that date against Plaintiffs and three additional Counterclaim Defendants.  *See* Def.'s Counterclaim, ECF No. 47 (filed Feb. 27, 2019).

On March 19, 2019, Defendants filed a motion seeking to dismiss Plaintiffs' First Amended Complaint in its entirety and with prejudice.  *See* Defs.' Mot. to Dismiss Pls.' 1st Am. Compl., ECF No. 58 (filed Mar. 19, 2019).  That motion remains pending, although Plaintiffs have objected to the independent assertion of counterclaims by Defendants in a context other than a pleading identified in FED. R. CIV. P. 7(a).  To address this concern (and to avoid the need for judicial intervention), Defendants have agreed to withdraw their previous counterclaims and to re-assert them in the context of a pleading enumerated under FED. R. CIV. P. 7(a).  This will enable Defendants to engage in discovery relating to their counterclaims at the same time as discovery in the main action proceeds (thus avoiding the need for repeated discovery).  In exchange for the withdrawal and substitution of the pleading in which Defendants' counterclaims were previously contained, on March 19, 2019, Plaintiffs agreed not to assert any arguments that Defendants' counterclaims were somehow waived upon withdrawal and refiling.

Accordingly, Defendants submit this partial answer to the First Amended Complaint for the purposes of preserving their objections and enabling discovery on their counterclaims to proceed concurrent with Plaintiffs' latest causes of action.  For their partial answer to the First Amended Complaint, Defendants admit the allegations contained in Paragraphs 1, 3, 4, 5, 7, 8, 9, 10, 11, 12, 13, 14, 15, 17, 18, 19, 23, and 29 of that pleading.  All remaining allegations in the First Amended Complaint are generally denied pending the Court's ruling on Defendants' motion to dismiss the pleading.  Defendants may also assert the affirmative defenses of accord and satisfaction, arbitration, assumption of risk, contributory negligence, duress, estoppel, failure of

consideration, fraud, illegality, laches, license, payment, release, or waiver, although the proper assertion of any such affirmative defenses is also contingent upon the Court's ruling on Defendants' pending motion to dismiss the First Amended Complaint.  Depending on the claims that survive that motion (if any), Defendants will amend this partial answer to more closely conform to the traditional paragraph-by-paragraph format typically utilized for answers in the District of Colorado and elsewhere.[1]

Based on the foregoing and on the arguments set forth in Defendants' motion to dismiss Plaintiffs' First Amended Complaint in its entirety and with prejudice, *see* Defs.' Mot. to Dismiss Pls.' 1st Am. Compl., ECF No. 58 (filed Mar. 19, 2019), Defendants pray this Court to enter judgment in their favor and against Plaintiffs, and to award the costs and fees associated with this action to Defendants upon disposition.  Where any causes of action asserted by Plaintiffs are allowed to proceed, Defendants request a trial by jury of any issues so triable.  Via this partial answer, Defendant Eric Kimberling also asserts the following counterclaims:

## COUNTERCLAIMS

Defendant and Counterclaim Plaintiff Eric Kimberling ("Kimberling") brings the following counterclaims against Plaintiffs and Counterclaim Defendants Panorama Consulting Solutions, LLC ("Panorama"), KHG Holdings, LLC ("KHG"), Calvin Hamler ("Hamler"), Vanessa Davison ("Davison"), and Samuel Clarke ("Clarke") (collectively, "Counterclaim Defendants").  In support of these counterclaims, Kimberling alleges as follows:

---

[1]     Notwithstanding Defendants' commitment to amend this partial answer if certain of the claims appearing in the First Amended Complaint are allowed to proceed, this partial answer already conforms to the language of FED. R. CIV. P. 8, which states both that "No technical form is required," FED. R. CIV. P. 8(d)(1), and that a party may "generally deny all [allegations] except those specifically admitted."  FED. R. CIV. P. 8(b)(3).

*Introduction*

1.      Kimberling is a world-renowned expert in Enterprise Resource Planning ("ERP") and digital transformation.  Kimberling has published nearly 1,000 articles, white papers, and reports in his career, and has been involved in over 1,000 ERP implementations.

2.      Kimberling is a founder and former Managing Partner of Panorama, from which he resigned on April 13, 2018.

3.      While at Panorama, Kimberling was responsible for creating most of the company's thought leadership, which Panorama continues to recycle and benefit from to this day.

4.      Upon his resignation, Kimberling sought to amicably resolve and divest his business interests from those of his partners, Hamler and Davison.  Notwithstanding Kimberling's efforts to part ways in a professional manner, Hamler and Davison made every effort to sabotage and occlude Kimberling's efforts to dissociate, attacking both his economic interests in Panorama and his character and reputation.  These actions were purposeful, willful, wanton, and malicious, and culminated with Counterclaim Defendants filing a lawsuit against Kimberling on June 1, 2018. *See generally*, Pls.' Compl., ECF No. 1 (filed June 1, 2018).

5.      On behalf of himself and his new venture – Defendant Third Stage Consulting Group, LLC ("Third Stage") – Kimberling moved to dismiss Counterclaim Defendants' lawsuit in its entirety on July 23, 2018.  That motion remains pending for disposition by the Court.

6.      In the meantime, Kimberling now seeks to prevent Counterclaim Defendants from: (1) interfering with his business; (2) defaming his reputation in the ERP consulting industry; (3) hacking into Kimberling's personal electronic accounts; (4) withholding from Kimberling monies owed to him as an employee and vested stake-owner of Panorama; (5) converting Kimberling's equity interests via breach of contract and breach of fiduciary duty; and (6) harassing Kimberling and threatening physical harm.

7. Kimberling also seeks damages proximately caused by Counterclaim Defendants' illegal actions, which were taken after Kimberling resigned from Panorama, and which were caused by the direct mismanagement of Panorama.

*__Parties__*

8. Counterclaim Plaintiff Eric Kimberling is a citizen of Colorado.

9. Counterclaim Defendant KHG is a Colorado limited liability company ("LLC") with its principal place of business located in Colorado.

10. Counterclaim Defendant Panorama is a Colorado limited liability company ("LLC") with its principal place of business located in Colorado.

11. Counterclaim Defendant Calvin Hamler is a citizen of Colorado who resides at 820 Good Hope Drive, Castle Rock, CO 80108.

12. Counterclaim Defendant Vanessa Davison is a citizen of Colorado who resides at 5 Foxtail Circle Cherry Hills Village, CO 80113.

13. Counterclaim Defendant Samuel Clarke is a citizen of Colorado whose address is presently unknown.  Clarke works at Panorama, located at 5975 S. Quebec Street, Suite 207, Greenwood, CO 80111.

*__Jurisdiction and Venue__*

14. This Counterclaim Complaint asserts causes of action under the Stored Communications Act, 18 U.S.C. § 2701, and the Electronic Communications Privacy Act, 18 U.S.C. § 2501, which both arise under the laws of the United States to create and vest jurisdiction under 28 U.S.C. § 1331.  This Court has supplemental jurisdiction over any additional state law claims under 28 U.S.C. § 1367(a).

15.     Venue is proper in this Court because all parties are citizens of Colorado and because a substantial part of the events or omissions giving rise to the counterclaims occurred in Colorado.

**_Kimberling's Experience in the ERP Industry_**

16.     Kimberling is a recognized and respected ERP systems expert in organizational change management, project management, implementation, and evaluation.

17.     Kimberling has provided advice and counsel to national and international clients in the ERP industry for over twenty years.

18.     In addition to his extensive ERP consulting experience, Kimberling has also helped clients with business integration after a merger or acquisition, and helped clients with business process reengineering and Six Sigma.

19.     Kimberling further demonstrates his extensive industry experience as a frequent speaker in seminars, webinars, and videos.

20.     Kimberling routinely gives ERP-related speeches at industry conferences and universities, and has been quoted in books, magazines, and newspaper articles on ERP-related topics.  Such articles have appeared in periodicals such as the _Wall Street Journal_, _CIO Magazine_, and _Fortune_.

21.     Kimberling has served as an expert witness in many of the industry's highest-profile legal cases, representing both government and private companies across the globe.

22.     Kimberling is also the author of the following publications: "An Expert's Guide to ERP Success; "Lessons from 1,000+ ERP Implementations;" "Definitive Guide to a Successful SAP S/4HANA Transformation;" and "Definitive Guide to a Successful Microsoft Dynamics 365 Transformation."

*__Kimberling Founds Panorama__*

23.      Kimberling had significant experience and expertise in ERP even before he founded and became a Managing Partner of Panorama.

24.      In 2005, Kimberling founded a company called Panorama Consulting Group, LLC, which was focused on providing consulting services in the ERP industry.

25.      In 2011, Kimberling and Hamler agreed to become co-owners and managing partners of a newly created company called Panorama Consulting Solutions, LLC (above and hereafter "Panorama"), which like its predecessor would focus on providing ERP consulting services to clients.  Hamler later introduced Kimberling to Davison and convinced Kimberling that Davison would make a good third business partner for Panorama.

26.      The main reason Hamler and Davison partnered with Kimberling was to capitalize on Kimberling's name and extensive experience in the ERP consulting industry.  Prior to working with Kimberling, neither Hamler nor Davison had experience in the ERP consulting industry.  Their previous professional experience was in mortgage banking.

27.      Kimberling brought to Panorama years of experience in the ERP industry and deep client relationships with companies around the world.

28.      On September 14, 2012, Panorama was formed, and Kimberling became an employee by role and a managing partner in title.

29.      Kimberling signed the Panorama operating agreement (establishing the company), and received a forty percent equity stake in Panorama (in addition to equity stakes in two subsidiaries – ITLX [at 40.0 percent] and Panorama Government Solutions [at 24.5 percent]).

*__Kimberling Objects to Business Practices Employed by Hamler and Davison__*

30.      Subsequent to forming Panorama, it became apparent to Kimberling that Hamler and Davison were mismanaging the company, and that both were engaging in improper and

unscrupulous practices at the expense of clients.  Direct mismanagement by Hamler and Davison included, but was not limited to the following:

(a)     Providing poor service to clients that led to the termination of client contracts at an unprecedented rate;

(b)     Misrepresenting to clients and to the public that Davison was a "Graduate of Harvard Business School," when she merely attended a weeks-long course at Harvard and never received a formal academic degree;

(c)     Misrepresenting to customers that Panorama was an "independent" consultant, when in fact the company was (unbeknownst to its customers) referring the assignment of leads to a software consulting company called "IT Junction, LLC," in which Panorama had a direct financial interest;

(d)     Forcing Panorama consultants to recommend vendors and interested partners of IT Junction, LLC to clients, even if such vendors were not the right fit for Panorama's customers;

(e)     Failing to match Kimberling's work ethic and hours in service of clients, and failing to show up for work in service of clients;

(f)     Declining to travel to interact with clients at their home locations, thus forcing Kimberling to spend over 100 days each year traveling to client sites to maintain client relationships;

(g)     Acting inappropriately during client meetings, and in such a manner that caused clients to question their behavior and professionalism; and

(h)     Neglecting to generate sufficient new business and clients for Panorama, thus leaving the task of client development to Kimberling alone.

31.     Kimberling also disagreed with the treatment of former employees by Hamler and Davison.  Hamler and Davison would file meritless lawsuits against former employees as a means of harassing or punishing those employees for leaving Panorama.

32.     At one point, Hamler stopped working for Panorama or even showing up to the office.  Nevertheless, Hamler still insisted on receiving his full salary (which was equal to Kimberling's salary).

33.     Kimberling and Davison discussed terminating Hamler for cause, and even spoke to Panorama's attorney at that time for advice.  It was only after Kimberling and Davison confronted Hamler and delivered an ultimatum that Hamler came back to work (at least in the short term).

34.     In the spring of 2018, Kimberling had reached a breaking point in his dealings with Hamler and Davison, and ultimately decided that he needed to resign.  His frustrations stemmed principally from a dispute with Hamler and Davison over the staffing of a project for a large steel producer.

35.     Kimberling had identified a company called "Envision" to provide a very particular type of consulting work on a joint project for the large steel producer.  Panorama had neither the staffing nor the expertise to perform this particular type of consulting work.  Indeed, even before work on the project began, Davison agreed to use Envision to perform this work.

36.     Envision therefore proposed a highly qualified Envision employee for the job, who had an exceptional academic pedigree and who had experience in manufacturing.  Better still, this Envision employee had provided the necessary type of consulting services to previous clients with great success.

37.     Both Kimberling and the lead account executive for Panorama (Laura Florence) believed that this particular Envision employee was the exact individual needed to perform the work required.

38.     Hamler and Davison disagreed.  Instead, they supported a different candidate (unknown to Kimberling) who possessed only a criminal justice degree, and who had no experience in manufacturing.  After interviewing both candidates, the lead account executive for Panorama wrote to Kimberling, Hamler, and Davison to stress that the candidate proposed by Hamler and Davison should not even be considered due to her lack of experience in manufacturing.

39.     Notwithstanding either the industry knowledge of Kimberling or the opinions of their own lead account executive – and completely ignoring what would have been best for the client – Hamler and Davison selected the underqualified contractor, despite Davison's earlier agreement and commitment to use Envision to perform this work.

40.     Although Panorama would have made essentially the same money from either candidate, the failure to employ the more qualified Envision resource after Davison committed to using Envision disastrously caused Envision to terminate its ongoing partnership with Panorama and to forsake any opportunity for the two companies to continue working together to their mutual advantage and profit in the future.

### *Kimberling Resigns from Panorama*

41.     On April 5, 2018, Kimberling sent an e-mail to Hamler and Davison announcing that he was resigning, effective April 13, 2018.  This e-mail followed at least two attempts to get together in person with Hamler and Davison, both of whom ignored Kimberling's overtures to meet.  In fact, Kimberling had specifically requested a meeting with both Hamler and Davison on Thursday, April 5, 2018, as neither had any work commitments scheduled that day.  Davison's

calendar indicated she was "working from home," while Hamler's calendar actually advised that he would be watching the 2018 Masters Golf Tournament that entire afternoon.

42.     Kimberling, as part of his resignation, offered in an e-mail to Hamler and Davison to help Panorama "transition and retain clients," and to "reach an agreement to unwind [the three Managing Partners'] respective ownership stakes."   Kimberling received no response to this e-mail from Hamler or Davison.

43.     Kimberling sent a second e-mail on April 8, 2018, in which he repeated his offer to help Panorama transition clients and business.  Kimberling stated in the e-mail, "Please let me know how I can help."

44.     Hamler finally responded to Kimberling, informing Kimberling that he could meet with a sales employee of Panorama to transition clients.  Neither Hamler nor Davison attended this meeting with Kimberling.

45.     Neither Hamler nor Davison provided any further direction to Kimberling regarding the transition from Panorama.

46.     Instead, Hamler and Davison took employees of Panorama to a Colorado Rockies game, where Hamler and Davison openly disparaged Kimberling in front of other Panorama employees.

### *Hamler and Davison Refuse to Pay Kimberling Amounts Owed*

47.     Hamler and Davison refused to pay Kimberling guaranteed pay earned by Kimberling for the first half of the month of April of 2018.

48.     Hamler and Davison also refused to pay Kimberling thousands of dollars in out-of-pocket business expenses that were previously approved by Panorama for reimbursement (the approval for which was later revoked upon the inception of litigation).  These expenses were for business and new client development that directly benefitted Panorama.

49.     To date, Hamler and Davison have not paid Kimberling any distribution of profits earned by Panorama since April of 2018, despite the fact that Kimberling holds a forty percent ownership interest in Panorama.

### *Panorama Defames Kimberling's Reputation in the Open Marketplace*

50.     Within days of Kimberling's resignation, an individual believed to be working on behalf of Panorama created several active Twitter accounts and publicly posted false and defamatory comments about Kimberling on Twitter.

51.     This individual created several similar Twitter accounts to disparage and defame Kimberling.

52.     The public comments made included, but were not limited, to the following:

(a)     "Unfortunately, you have been dupped [sic].  Eric did not create most of the content it was outsourced or written by other Employees.  He was just the front man"

(b)     "10-year-old information and zero experience with digital transformation this should be an exciting read of nothing but BS.  Watch Eric scramble as you askhim [sic] specific questions.  Nothing but High level answers you can get from a 2 minute Google search @Expertfraud"

(c)     "I assume you didn't do the 1,000 implementations because you surely haven't done a single one in the past 8 years.  Not to mention you don't truly understand what Digital Transformation is . . . hint it isn't ERP like you tried to say at a boot camp"

(d)     "About as reliable as theonion.com At least the Onion doesn't try to inflate their self-worth with bogus titles and egotistical claims"

(e)     "Eric knows nothing of Digital Transformation. He thinks it is just making things digital. You can learn more from Google in 5 minutes.  Don't buy his used car salesman tactics. #ericisclueless . . . #CIO #ericisafraud"

(f)     "If you are okay working with someone who knows nothing and doesn't have a team then apply here. #thirdstageerp is a sham"

(g)     "No tears there I wish I bought my ticket to get the real data, rather than your sales hype to just bill clients.  A quick search on google shows PCG went defunct under your command years ago.  The actual company is PCS. #moreliesfromerickimberling"

(h)     "The founder of Third stage did not do 1000's or even 10's of implementations.  This data is made up. #erickimberlingisafraud"

(i)     "Feedback is the site sucks. You say you have a team. . . . . really who? Thought leadership is based on 10 year old data. @usedcarsalestactics. If you talk ask the hard questions a real consultant could answer"

(j)     "Do not work for this crooked company not only can they not pay but the founder has no idea what he is talking about and has touted himself the world expert with no data to back up the claim. #falseadvertising @cluelessinerp"

53.     The comments made were negative in nature and highly defamatory, and tended to lessen, lower, or damage Kimberling's reputation in the relevant community, as they falsely impugned Kimberling's performance in his profession and his ability to perform his job.

54.     The disparaging tweets were made under the following accounts:

(a)     @andyjassy

(b)     @andy_jassy

(c)     @AndyJassy1

(d)     @AndyJassy3

(e)     @Jassy1974

55.     Kimberling's attorney sent a cease-and-desist letter to Panorama, demanding that Panorama stop Tweeting disparaging, false, and defamatory comments about Kimberling.

56.     Upon receipt of the cease-and-desist letter, the negative Tweets immediately stopped.  This strongly suggests that these negative Tweets were made by Panorama employees with the full knowledge of Hamler and Davison (or perhaps even made by Hamler or Davison themselves).

57.     Regardless, the defamatory comments have now resumed.  On the day this Counterclaim Complaint is being filed, an individual writing from the e-mail address "bogus@fuckfaceeric.org" publicly posted the following comment on Third Stage's website:

> Funny how you talk about owning it when you threw a temper tantrum for Panorama not wanting to outsource their work to your just as corrupt buddy over at envision. You have zero integrity. Smoke and mirrors. The worst part is you are such a diseased narrsassist [sic] you will never even see it. So freaking pathetic and so predictable. I don't care that you will block this comment. You should just pray I never meet you in an alleyway.

58.     The e-mail address "bogus@fuckfaceeric.org" is a disguised alias for the e-mail address "floogerbomb@gmail.com."  This effort to obfuscate the true e-mail address was uncovered and flagged by Third Stage's website, which captured the IP address of the true sender ("floogerbomb@gmail.com").  Not by coincidence, "@floogerbomb" is the Twitter handle of Samuel Clarke – Panorama's Director of Information Technology and Marketing.  There is thus zero question that Clarke posted the foregoing message on Third Stage's website.  Clarke is a high-ranking executive and decision-maker at Panorama who sets policies for the company and has a direct say on (and control over) company operations.

59.     Even if Counterclaim Defendants deny wrongdoing by Clarke himself, the above statement could only have been made by an individual who is intimately familiar with both the events that occurred at Panorama while Kimberling worked there, and the underlying facts at issue

14

in this lawsuit.  This is once again an instance of a Panorama employee or agent making defamatory comments about Kimberling, the responsibility for which is also imputable to Hamler and Davison in the wake of the cease-and-desist letter.

60.     Kimberling has suffered damage to his reputation as a result of these negative Tweets and public postings.

***Panorama Hacks into Kimberling's Personal Electronic Accounts***

61.     In the months after Kimberling left Panorama, employees of Panorama accessed Kimberling's personal accounts on LinkedIn, Glassdoor.com, GoDaddy.com, and Hilton.com, and surreptitiously read and reviewed both messages and activity by Kimberling on those websites.

62.     At no time did Kimberling consent to Panorama employees accessing his personal accounts on the LinkedIn, Glassdoor.com, and GoDaddy.com.  Kimberling (while working for Panorama) gave his executive assistant permission to access his Hilton.com account, but this permission was revoked upon his resignation.

63.     On information and belief, employees of Panorama accessed these accounts at the direction of (or with the immediate knowledge and approval of) Hamler and Davison.

64.     On information and belief, employees of Panorama accessed Kimberling's accounts on LinkedIn, Glassdoor.com, GoDaddy.com, and Hilton.com to covertly gather information on Kimberling's post-resignation business activities and client contacts.

***Panorama Continues to Attempt to Spy on Kimberling***

65.     Despite the fact that Kimberling has been dissociated from Panorama for nearly a year, Panorama continues to engage in efforts to spy on Kimberling and attempt to gather information about his clients and business practices.

66.     For example, in December of 2018, Kimberling and Third Stage held a conference entitled "Digital Stratosphere 2018," which was a series of seminars dedicated to various ERP and

digital transformation topics.  The minimum-tier registration for the conference was $1,500.00, which allowed attendees to be present at all sessions of the event.

67.     One attendee who signed up for the conference was Jennifer Rosenberg ("Rosenberg") – who initially identified herself as an "unemployed IT professional."

68.     As the conference approached, Kimberling sent informational materials to all Stratosphere attendees, including Rosenberg.

69.     The day before Stratosphere began, Rosenberg sent an e-mail to Kimberling entitled "Leave me out of it."  In the e-mail, Rosenberg announced that she "owe[d] no one money" and did "not want to be involved in whatever fraud you have going on."  What was odd about the message was that in addition to Kimberling, the e-mail from Rosenberg was also sent to Laura Florence – an account executive and Director of Business Development for Panorama.  Rosenberg obviously knew or had been in communication with Florence, as Kimberling had not contacted Florence in person or by e-mail since leaving Panorama.

70.     The obvious implication is that Panorama – vis-à-vis Florence – had encouraged Rosenberg to attend Stratosphere as a "mole" to provide information back to Hamler and Davison.

71.     Panorama's efforts to use the Stratosphere conference as a means to harass and frustrate Kimberling did not end there.  On the final day of the conference, Panorama's attorneys in this action sent a letter to the partner-in-charge of the Chicago office of the law firm representing Kimberling, demanding that Kimberling's attorneys "preserve all documents" due to the fact that they had co-sponsored Digital Stratosphere 2018.

72.     This case is obviously very personal for Hamler and Davison, who appear to be willing to use any methods available to harm Kimberling and his new business to the same degree they believe they have somehow been injured as the result of Kimberling's departure.

## COUNT I
## VIOLATION OF THE STORED COMMUNICATIONS ACT
### (18 U.S.C. § 2701 *et seq.*)

### (AGAINST KHG, PANORAMA, HAMLER, AND DAVISON)

73.     Kimberling repeats and realleges the allegations contained in Paragraphs 1 through 72 above, as if fully set forth herein.

74.     Kimberling's private messages and online activities were stored on servers located at LinkedIn.com, Glassdoor.com, GoDaddy.com, and Hilton.com, and were only accessible to Kimberling as the account holder for his LinkedIn, Glassdoor.com, GoDaddy.com, and Hilton.com accounts.

75.     Kimberling never authorized KHG, Panorama, Hamler, Davison, or any other Panorama employee to access his LinkedIn, Glassdoor.com, and GoDaddy.com accounts, and simply revoked permission (upon his resignation) for Panorama to access his Hilton.com account.

76.     Kimberling's LinkedIn, Glassdoor.com, GoDaddy.com, and Hilton.com accounts were all password-protected from unauthorized disclosure.

77.     After Kimberling resigned from Panorama, employees of Panorama accessed Kimberling's personal LinkedIn, Glassdoor.com, GoDaddy.com, and Hilton.com accounts and surreptitiously read and reviewed Kimberling's messages and online activities stored on these accounts.

78.     In the case of LinkedIn, Panorama actually changed Kimberling's personal password after it accessed his LinkedIn account without his authorization.

79.     On information and belief, Panorama's employees accessed Kimberling's LinkedIn, Glassdoor.com, GoDaddy.com, and Hilton.com accounts at the direction of (or with the immediate knowledge and approval of) Hamler and Davison.

17

80.     Panorama accessed Kimberling's LinkedIn, Glassdoor.com, GoDaddy.com, and Hilton.com accounts in order to spy on Kimberling's business activities and gain an unfair business advantage over Kimberling.

81.     Panorama also accessed Kimberling's LinkedIn, Glassdoor.com, and GoDaddy.com accounts to gather information that would serve as a pretext for filing a lawsuit against Kimberling, and Panorama has based some of its allegations on information it illegally obtained from Kimberling's LinkedIn, Glassdoor.com, and GoDaddy.com accounts.

82.     On information and belief, Counterclaim Defendants hacked into other personal online accounts of Kimberling after he resigned.

83.     LinkedIn's server, where it stores the online activities and messages of its users, is a "facility" for purposes of the Stored Communications Act.

84.     Hilton's server, where it stores the online activities and messages of its users, is a "facility" for purposes of the Stored Communications Act.

85.     Glassdoor's server, where it stores the online activities and messages of its users, is a "facility" for purposes of the Stored Communications Act.

86.     GoDaddy's server, where it stores the online activities and messages of its users, is a "facility" for purposes of the Stored Communications Act.

87.     LinkedIn provides an "electronic communication service" to its customers within the definition of the Stored Communications Act.

88.     Hilton provides an "electronic communication service" to its customers within the definition of the Stored Communications Act.

89.     Glassdoor provides an "electronic communication service" to its customers within the definition of the Stored Communications Act.

90.     GoDaddy provides an "electronic communication service" to its customers within the definition of the Stored Communications Act.

91.     The Stored Communications Act (18 U.S.C. § 2707) authorizes a civil action for Panorama's unauthorized accessing of Kimberling's LinkedIn, Glassdoor.com, GoDaddy.com, and Hilton.com accounts and online activities associated with these accounts (such as messaging).

92.     In violating the Stored Communications Act, the Counterclaim Defendants proximately caused harm to Kimberling, and Kimberling has suffered damages.

WHEREFORE, Kimberling demands judgment against the Counterclaim Defendants as a result of their unauthorized access to his personal accounts, and seeks the following remedies:

a.      Actual damages;

b.      Statutory damages under the Stored Communications Act;

c.      Punitive damages;

d.      An injunction ordering KHG, Panorama, Hamler, and Davison to refrain from accessing any personal account of Kimberling, including, but not limited to, Kimberling's LinkedIn, Glassdoor.com, GoDaddy.com and Hilton.com accounts;

e.      Disgorgement of the profit and benefit received by KHG, Panorama, Hamler, and Davison as a result of their unauthorized access to Kimberling's personal accounts;

f.      Exclusion of any evidence to be used by Counterclaim Defendants in their lawsuit against Kimberling, where the evidence was obtained in violation of the Stored Communications Act;

g.      Attorney's fees and costs; and

h.      All other relief this Court deems proper.

## COUNT II
## VIOLATION OF THE ELECTRONIC COMMUNICATIONS PRIVACY ACT
### (18 U.S.C. § 2501 *et seq.*)

### (AGAINST KHG, PANORAMA, HAMLER, AND DAVISON)

93.     Kimberling repeats and realleges the allegations contained in Paragraphs 1 through 92 above, as if fully set forth herein.

94.     The Electronic Communications Privacy Act ("ECPA") imposes liability on anyone who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication."

95.     The ECPA defines "intercept" to mean "the aural or other acquisition of the contents of any wire, electronic, or oral communications through the use of any electronic, mechanical, or other device."  18 U.S.C. 2510(4).

96.     Under the ECPA, any person "whose wire, oral or electronic communication is intercepted, disclosed, or intentionally used" has a private right of action to recover from the person or entity that engaged in the interception any relief that may be appropriate – including preliminary, equitable and declaratory relief, actual statutory and punitive damages; and reasonable attorneys' fees and costs."  18 U.S.C. § 2520.

97.     Panorama intentionally intercepted Kimberling's online activities and communications through the use of an electronic device (the precise identity of which is not yet known).

98.     On information and belief, Panorama intentionally intercepted Kimberling's online activities and communications at the direction of (or with the immediate knowledge and approval of) Hamler and Davison.

99.     Panorama accessed Kimberling's LinkedIn, Glassdoor.com, GoDaddy.com, and Hilton.com accounts to spy on Kimberling's business activities and gain an unfair business advantage over Kimberling.

100.    Counterclaim Defendants also brought a lawsuit against Kimberling based on allegations derived in part from information gleaned from Kimberling's personal accounts.

101.    On information and belief, Counterclaim Defendants hacked into other personal online accounts of Kimberling after he resigned.

102.    In violating the ECPA, Counterclaim Defendants proximately caused harm to Kimberling, and Kimberling has suffered damages as a result.

WHEREFORE, Kimberling demands judgment against Counterclaim Defendants as a result of their unauthorized access to his personal accounts, and seeks the following remedies:

a.      Actual damages;

b.      Statutory damages under the ECPA;

c.      Punitive damages;

d.      An injunction ordering KHG, Panorama, Hamler, and Davison to refrain from accessing any personal account of Kimberling, including, but not limited to, Kimberling's LinkedIn, Glassdoor.com, GoDaddy.com and Hilton.com accounts;

e.      Disgorgement of the profit and benefit received by KHG, Panorama, Hamler, and Davison as a result of their unauthorized access to Kimberling's personal accounts;

f.      Exclusion of any evidence to be used by Counterclaim Defendants in their lawsuit against Kimberling, where the evidence was obtained in violation of the ECPA;

g.      Attorney's fees and costs; and

h.      All other relief that this Court deems proper.

### COUNT III
### VIOLATION OF COLORADO'S COMMON LAW
### RIGHT OF PRIVACY

### (AGAINST KHG, PANORAMA, HAMLER, AND DAVISON)

103.    Kimberling repeats and realleges the allegations contained in Paragraphs 1 through 102 above, as if fully set forth herein.

104.    Panorama intentionally intercepted Plaintiffs' communications and online activities through the use of an electronic device (the precise identity of which is not yet known).  In so doing, Panorama intentionally intruded upon Kimberling's common law right of privacy.

105.    On information and belief, Panorama intentionally intercepted Plaintiffs' communications and online activities at the direction of Hamler and Davison.

106.    Panorama accessed Kimberling's LinkedIn, Glassdoor.com, GoDaddy.com, and Hilton.com accounts to spy on Kimberling's business activities and gain an unfair business advantage over Kimberling.

107.    Panorama's intrusion upon Kimberling's right of privacy is offensive and objectionable to a reasonable person in Kimberling's position.

108.    Counterclaim Defendants brought a lawsuit against Kimberling based on allegations derived in part from information gleaned from Kimberling's personal accounts.

109.    On information and belief, Counterclaim Defendants hacked into other personal online accounts of Kimberling after he resigned.

110.    In violating Kimberling's common law right of privacy, Counterclaim Defendants proximately caused harm to Kimberling, and Kimberling has suffered damages.

WHEREFORE, Kimberling demands judgment against Counterclaim Defendants as a result of their unauthorized access to his personal accounts, and seeks the following remedies:

a.    Actual damages;

b.    Punitive damages;

c.    An injunction ordering KHG, Panorama, Hamler, and Davison to refrain from accessing any personal account of Kimberling, including, but not limited to, Kimberling's LinkedIn, Glassdoor.com, GoDaddy.com and Hilton.com accounts;

d.    Disgorgement of the profit and benefit received by KHG, Panorama, Hamler, and Davison as a result of their unauthorized access to Kimberling's personal accounts;

e.    Exclusion of any evidence to be used by Counterclaim Defendants in their lawsuit against Kimberling, where the evidence was obtained in violation of Kimberling's common law right of privacy; and

f.    All other relief that this Court deems proper.

## COUNT IV
## BREACH OF CONTRACT

### (AGAINST KHG, PANORAMA, HAMLER AND DAVISON)

111.    Kimberling repeats and realleges the allegations contained in Paragraphs 1 through 110 above, as if fully set forth herein.

112.    The Panorama operating agreement is a legal and binding contract that governs the duties and obligations of Panorama to its owners.  Hamler and Davison entered into this contract with Kimberling, which established Kimberling's status as a forty percent owner of Panorama (and an equity stake holder in both ITLX and Panorama Government Solutions).

113.    The Panorama operating agreement creates an implied duty of good faith and fair dealing under C.R.S. § 7-80-404(3), which is the only duty that cannot be waived by the terms of an operating agreement that establishes an LLC.  *See* C.R.S. § 7-80-108(2)(d).

114.    As an owner of Panorama, Kimberling is entitled to his commensurate share of all profit distributions made by Panorama to its owners.

115.    After Kimberling resigned, Hamler and Davison conspired to withhold any profit distributions from Kimberling, despite the fact that on information and belief, Panorama has made profit distributions since Kimberling's resignation.

116.    Counterclaim Defendants have refused to provide sufficient company financial information to Kimberling that would enable him to determine the value of his ownership stake or the precise amounts owed to him since leaving Panorama.

117.    Counterclaim Defendants refusal to pay Kimberling any profit distributions since April of 2018 is a breach of the operating agreement that Kimberling, Hamler, and Davison signed.

118.    The actions of Counterclaim Defendants are also a violation of the implied duty of good faith and fair dealing inherent within the operating agreement.

119.    Counterclaim Defendants' breach of the operating agreement has proximately caused damages to Kimberling.

WHEREFORE, Kimberling demands judgment against Counterclaim Defendants as a result of their breach of contract, and seeks the following remedies:

a.    Actual damages;

b.    An injunction ordering KHG, Panorama, Hamler, and Davison to specifically perform under the operating agreement and pay Kimberling his percentage of any profit distributions made by Panorama to its owners on a go-forward basis;

c.    Disgorgement of the profit and benefit received by KHG, Panorama, Hamler, and Davison as a result of their unauthorized withholding of Kimberling's entitled profit distributions; and

d.    All other relief that this Court deems proper.

## COUNT V
## BREACH OF FIDICUARY DUTIES

### (AGAINST HAMLER AND DAVISON)

120.    Kimberling repeats and realleges the allegations contained in Paragraphs 1 through 110 above, as if fully set forth herein.  This count is pled in the alternative.

121.    The Panorama operating agreement is a legal and binding contract that governs the duties and obligations of Panorama to its owners.  Hamler and Davison entered into this contract with Kimberling, which established Kimberling's status as a forty percent owner of Panorama.

122.    The Panorama operating agreement creates an implied duty of good faith and fair dealing under C.R.S. § 7-80-404(3), which is the only duty that cannot be waived by the terms of an operating agreement that establishes an LLC.  *See* C.R.S. § 7-80-108(2)(d).

123.    As an owner of Panorama, Kimberling is entitled to all profit distributions made by Panorama to its owners.

124.     As majority owners and Managing Partners of Panorama, Hamler and Davison owed fiduciary duties to minority equity owners of Panorama, including Kimberling.  These fiduciary duties included the duty to refrain from taking any actions to benefit themselves at the expense of Kimberling's equity share and distributed profits – which is a breach of the implied duty of good faith and fair dealing.

125.     After Kimberling resigned from Panorama, Hamler and Davison conspired to withhold any profit distributions from Kimberling, despite the fact that on information and belief, Panorama has made profit distributions since Kimberling's resignation.

126.     Counterclaim Defendants have refused to provide sufficient company financial information to Kimberling that would enable him to determine the value of his ownership stake or the precise amounts owed to him since leaving Panorama.

127.     The refusal by Hamler and Davison to pay Kimberling any profit distributions since April of 2018 is a breach of the duty of good faith and fair dealing owed to Kimberling.

128.     These breaches of duty have proximately caused damages to Kimberling.

WHEREFORE, Kimberling demands judgment against Counterclaim Defendants as a result of their breach of duties owed to him, and seeks the following remedies:

a.     Actual damages;

b.     An injunction ordering Hamler and Davison to refrain from taking any actions to benefit themselves at the expense of Kimberling's equity share and distributed profits;

c.     Disgorgement of the profit and benefit received by KHG, Panorama, Hamler, and Davison as a result of their unauthorized withholding of Kimberling's entitled profit distributions; and

d.     All other relief that this Court deems proper.

<u>COUNT VI</u>
**CONVERSION**

**(AGAINST KHG, PANORAMA, HAMLER, AND DAVISON)**

129.    Kimberling repeats and realleges the allegations contained in Paragraphs 1 through 110 above, as if fully set forth herein.  This count is pled in the alternative.

130.    The Panorama operating agreement is a legal and binding contract that governs the duties and obligations of Panorama to its owners.  Hamler and Davison entered into this contract with Kimberling, which established Kimberling's status as a forty percent owner of Panorama (and an equity stake holder in both ITLX and Panorama Government Solutions).

131.    The Panorama operating agreement creates an implied duty of good faith and fair dealing under C.R.S. § 7-80-404(3), which is the only duty that cannot be waived by the terms of an operating agreement that establishes an LLC.  *See* C.R.S. § 7-80-108(2)(d).

132.    As an owner of Panorama, Kimberling is entitled to all profit distributions made by Panorama to its owners.

133.    After Kimberling resigned from Panorama, Hamler and Davison conspired to withhold any profit distributions from Kimberling, despite the fact that on information and belief, Panorama has made profit distributions since Kimberling's resignation.

134.    Counterclaim Defendants have refused to provide sufficient company financial information to Kimberling that would enable him to determine the value of his ownership stake or the precise amounts owed to him since leaving Panorama.

135.    The refusal of Hamler and Davison to pay Kimberling any profit distributions since April of 2018, or otherwise provide Kimberling with any of the benefits or rights to which he is entitled as an equity owner, constitutes conversion of Kimberling's entire forty percent equity interest of Panorama.

136.    This act of conversion by Counterclaim Defendants has proximately caused damages to Kimberling.

WHEREFORE, Kimberling demands judgment against Counterclaim Defendants as a result of their conversion of his equity interests, and seeks the following remedies:

a.    Actual damages consisting of the fair market value of Kimberling's forty percent equity interest in Panorama; and

b.    All other relief that this Court deems proper.

### COUNT VII
### VIOLATION OF THE COLORADO WAGE ACT

### (AGAINST KHG AND PANORAMA)

137.    Kimberling repeats and realleges the allegations contained in Paragraphs 1 through 136 above, as if fully set forth herein.

138.    Prior to his resignation from Panorama in April of 2018, Kimberling was an employee of Panorama.

139.    As an employee of Panorama, Kimberling was entitled to the salary and benefits promised to him by Panorama, as well as reimbursement for out-of-pocket business expenses on behalf of Panorama.

140.    KHG and Panorama, as directed by Hamler and Davison, willfully withheld Kimberling's guaranteed pay for the first half of the month of April of 2018.

141.    KHG and Panorama, as directed by Hamler and Davison, willfully refused to reimburse Kimberling for thousands of dollars of out-of-pocket expenses by Kimberling on behalf of Panorama.

142.    KHG and Panorama, as directed by Hamler and Davison, refused to reimburse Kimberling for these expenses, despite previously approving these expenses for reimbursement prior to Kimberling's resignation from Panorama.

143.     Hamler and Davison refused to pay Kimberling owed salary and reimbursement as a retaliatory measure against Kimberling because they were angry over the fact that Kimberling had resigned from Panorama.

144.     Kimberling has demanded that Counterclaim Defendants pay his earned salary and reimburse his out-of-pocket expenses, and Counterclaim Defendants have refused to make any payments to Kimberling.

145.     In withholding owed salary and out of pocket expenses, Panorama has violated the Colorado Wage Act, § 8-4-101 *et seq.*

146.     Kimberling has waited well over fourteen days from the time that he demanded payment from Panorama, but to no avail.  As a result, he is entitled to all remedies under the Colorado Wage Act.

147.    The failure by Counterclaim Defendants to comply with the Colorado Wage Act has proximately caused damages to Kimberling.

WHEREFORE, Kimberling demands judgment against Counterclaim Defendants as a result of their violation of the Colorado Wage Act, and seeks the following remedies:

a.     Actual damages;

b.     Statutory damages under the Colorado Wage Act;

c.     Punitive damages;

d.     Attorney's fees and costs; and

e.     All other relief that this Court deems proper.

## COUNT VIII
## DEFAMATION *PER SE*

### (AGAINST KHG, PANORAMA, HAMLER, DAVISON, AND CLARKE)

148.   Kimberling repeats and realleges the allegations contained in Paragraphs 1 through 147 above, as if fully set forth herein.

149.   Upon Kimberling's resignation, an anonymous individual posted to the public on Twitter numerous negative comments about Kimberling and his new company Third Stage.  *See supra* ¶ 52(a-j).

150.   Later, another individual posted similarly defamatory comments about Kimberling on Third Stage's website.  *See supra* ¶ 57.  The e-mail address used by this individual – "bogus@fuckfaceeric.org" was a disguised alias for the address "floogerbomb@gmail.com."  Not by coincidence, "@floogerbomb" is the Twitter handle of Clarke – Panorama's Director of Information Technology and Marketing, who is a high-ranking executive and decision-maker at Panorama who sets policies for the company and has control over company operations.

151.   These posts were all false, and intentionally published to defame Kimberling's reputation.  The comments tended to lessen, lower, or damage Kimberling's reputation, as they falsely impugned Kimberling's performance in his profession.

152.   The posts constitute defamation *per se* under the law, as they were false statements communicated to third parties that had an adverse impact on and caused damages to Kimberling's reputation and the perception of his performance in his profession.

153.   On information and belief, these posts were made by Clarke and others at the direction of KHG and Panorama, through Hamler's and Davison's express authorization.  This belief is bolstered by the fact that when Kimberling demanded that KHG and Panorama cease making these negative posts, they stopped – only to resume again by Clarke.

154.    These posts damaged Kimberling's reputation in the ERP community and proximately caused damages to Kimberling.

WHEREFORE, Kimberling demands judgment against Counterclaim Defendants as a result of their defamation *per se*, and seeks the following remedies:

a.    Actual damages;

b.    Punitive damages; and

c.    All other relief that this Court deems proper.

Dated:  March 22, 2019

Respectfully Submitted,

By:    s/ Brian Weinthal
       One of Defendants' Attorneys

       Jennifer Osgood
       josgood@bfwlaw.com
       CHIPMAN GLASSER
       2000 S. Colorado Boulevard, Tower 1
       Suite 7500
       Denver, Colorado 80222
       Telephone:    (303) 578-5789

       Brian Weinthal
       bweinthal@taftlaw.com
       Daniel R. Saeedi
       dsaeedi@taftlaw.com
       TAFT STETTINIUS & HOLLISTER LLP
       111 East Wacker Drive, Suite 2800
       Chicago, Illinois 60601
       Tel.:    (312) 836-4074

       *Counsel for Defendants Eric
       Kimberling and Third Stage
       Consulting Group, LLC*

24676801.1